**STATE FARM LLOYDS, INC., State Farm Lloyds, and State Farm Fire & Casualty Co., Appellants,**

v.

**Paula Mallow WILLIAMS and William Scott Wallace, Appellees.**

No. 05–93–00191–CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 1997.

---

Michelle E. Robberson, Dana Harbin, R. Brent Cooper, Cooper, Aldous & Scully, P.C.,Dallas, for Appellants.

Joe Hill Jones, John E. Agnew, Carter, Jones, Magee, Rudberg & Mayes, Bruce A. Budner, Budner & Weber, P.C.,, Bryan A. Garner, Dallas, for Appellees.

Before KINKEADE, WHITTINGTON and ROSENBERG,[1] JJ.

**OPINION ON REHEARING**

WHITTINGTON, Justice.

Appellees' motions for rehearing are granted. We withdraw our opinion of October 24, 1996, and substitute the following opinion in its place. We also vacate our previous judgment.

In this insurance case, State Farm Lloyds, Inc., State Farm Lloyds, and State Farm Fire & Casualty Co. (collectively, "State

---

1. The Honorable Barbara Rosenberg participated in this case at the time it was submitted for decision. She did not, however, participate in either the issuance of this Court's original opinion or this opinion on rehearing.

Farm") appeal a jury verdict in favor of Paula Mallow Williams and William Scott Wallace (collectively, "appellees"). In twenty-one points of error, State Farm contends (1) the evidence is legally and factually insufficient to support the jury's verdict; (2) the trial judge erred in concluding as a matter of law that there were two occurrences under the policy; (3) the trial judge erred in awarding damages as a matter of law; (4) the trial judge erred in admitting certain expert testimony; and (5) the trial judge erred in submitting certain jury instructions. Appellees each bring a conditional cross-point of error complaining of error in the court's charge. For the reasons set forth below, we conclude the evidence is legally sufficient to support the jury's findings on appellees' negligence, DTPA, and insurance code claims. Nevertheless, we conclude the trial judge erred in awarding damages based on those claims. Accordingly, we reverse the trial court's judgment and remand this cause for a new trial.

## THE UNDERLYING CAUSE OF ACTION

On June 20, 1987, Claude Fulton pointed a pistol at his wife, Frances Fulton, while Frances's daughter, Paula Mallow Williams (Paula), and Frances's granddaughter, Dava Williams Wallace (Dava), were present.[2] Claude fatally shot Dava as she dialed 911. Claude then shot Paula and Frances before shooting and killing himself. Paula and Frances survived the attack; however, Frances later died of cancer.

At the time of the shooting, Claude and Frances were covered by a homeowner's policy issued by State Farm. The policy provided $300,000 coverage per occurrence. In December 1987, appellees sued Claude's and Frances's estates, seeking compensation for injuries they sustained as a result of the shootings. Claude's and Frances's estates sought a defense and coverage under the homeowner's policy. State Farm tendered a defense to both Claude's and Frances's estates, but reserved its right to later deny coverage as to Claude's estate. State Farm took no similar action with respect to Fran-

ces's estate. In March 1988, appellees offered to settle their claims against Frances's estate for $600,000. Appellees claimed the demand was within policy limits because the shooting involved two separate occurrences. Frances's executor urged State Farm to accept appellees' offer, but State Farm refused to do so.

On July 21, 1988, the case was called for trial. After hearing evidence and the arguments of counsel, the trial court found Claude's and Frances's estates jointly and severally liable for $4.25 million. However, the judgment specifically stated that the judgment against Frances's estate could be enforced only against the community property assets of the estate that were in existence on June 20, 1987 (the day of the shootings). No appeal was taken from this judgment.

State Farm refused to pay any part of the judgment against Frances's estate. The first notice Frances's executor received of State Farm's intent to contest coverage occurred when State Farm filed a declaratory judgment suit against the estate following the July 21st judgment. Sometime thereafter, Frances's estate assigned any claims it might have against State Farm to appellees. In return, appellees agreed not to execute the July 21st judgment against any of Frances's estate's assets other than the homeowner's policy.

## SUIT AGAINST STATE FARM

Appellees subsequently filed this suit against State Farm as assignees of Frances's estate. In their petition, appellees asserted causes of action against State Farm for (1) breach of contract, (2) negligence, (3) breach of the duty of good faith and fair dealing, and (4) violations of the Texas Insurance Code and the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). Appellees sought actual and exemplary damages as well as attorney's fees.

Both sides moved for summary judgment. After a hearing, the trial judge granted a partial summary judgment in favor of appellees, holding that Frances's estate was an insured under the policy. The trial judge

2. Dava was married to William Scott Wallace.

then severed the partial summary judgment, and State Farm appealed to this Court. On appeal, we concluded the claims against Frances's estate were not covered under the policy. Nevertheless, we concluded fact issues existed on whether State Farm had waived or was estopped from asserting its coverage defenses. Thus, we remanded the case to the trial court. *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 552–53 (Tex.App.—Dallas 1990, writ denied) (*Williams I* ).

On remand from *Williams I,* the jury found State Farm had waived its coverage defenses and was estopped from denying coverage. The jury also found State Farm (1) was negligent in handling the underlying claim and lawsuit, (2) committed a false or deceptive act or practice, and (3) breached its duty of good faith and fair dealing. The jury awarded appellees $619,077.87 in actual damages for State Farm's breach of the duty of good faith and fair dealing. The trial court did not submit a question to the jury asking for a determination of damages based on the negligence, DTPA, and insurance code findings.

Following the verdict, appellees filed a motion for judgment on the verdict. In the motion, appellees asked the court to enter judgment as a matter of law in the amount of the underlying judgment. In support of this request, appellees relied on the Tyler Court of Appeals' opinion in *Allstate Insurance Co. v. Kelly,* 680 S.W.2d 595 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). The trial judge agreed with appellees that *Kelly* applied, disregarded the jury's award of damages for breach of the duty of good faith and fair dealing, and entered judgment as a matter of law in favor of appellees for $4.25 million in actual damages. The trial judge then trebled the damage award based on the jury's finding that State Farm had acted "knowingly." The trial court's final judgment awarded appellees $25,951,930.[3] This appeal followed.

## NUMBER OF OCCURRENCES

In its eleventh point of error, State Farm contends the trial judge, erred in (1) concluding as a matter of law that Claude's acts constituted two occurrences under the policy, and (2) instructing the jury to that effect. State Farm contends the instruction was improper because the actions at issue were based on a single individual, a single evening, and a single "fit of violence." [4]

Insurance policies are contracts and, as such, are governed by the rules of construction applicable to contracts generally. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). Normally, in the insurance context, the language and terms of a policy are chosen by the insurance company. *Barnett,* 723 S.W.2d at 666. Therefore, when the language chosen is ambiguous or inconsistent, and susceptible to more than one reasonable construction, the policy should be construed strictly against the insurer and liberally in favor of the insured. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex.1990); *Barnett,* 723 S.W.2d at 666. A strict construction is particularly appropriate when the case involves an exception or limitation to liability under the policy. *Barnett,* 723 S.W.2d at 666.

In this case, the homeowner's policy provides $300,000 coverage "per occurrence." However, the policy does not define the term "occurrence." Because the term is susceptible to more than one reasonable construction, we conclude the term is ambiguous. *See Barnett,* 723 S.W.2d at 665. Thus, we must construe the term strictly against the insurer. *Gonzalez,* 795 S.W.2d at 737; *Barnett,* 723 S.W.2d at 666. In *Maurice Pincoffs Co. v. St. Paul Fire & Marine Insurance Co.,* 447 F.2d 204 (5th Cir.1971), the Fifth Circuit held that multiple sales of contaminated bird seed resulted in multiple "occurrences" under a liability insurance policy despite the fact that the bird seed was contaminated on only one occasion. In reaching its decision, the court concluded that the meaning of the

---

3. This figure included not only actual and treble damages, but also prejudgment interest and attorney's fees.

4. We address State Farm's eleventh point of error first because our resolution of this point affects our resolution of arguments made under a number of State Farm's sufficiency points.

term "occurrence" referred to the actual *sales* of the bird seed, rather than the act of contamination, because the insured's liability arose out of the sale of the seed, not its contamination. *Maurice Pincoffs Co.*, 447 F.2d at 207.

■ We find the court's reasoning in *Maurice Pincoffs* instructive in the instant suit. Here, the insured's liability arose out of the *shootings* of Williams and Dava. Williams and Dava were not injured by a single shot. Rather, their injuries resulted from two separate acts. Because each "act" independently gave rise to liability, we conclude the shootings constituted two separate occurrences under the policy. *See Maurice Pincoffs Co.*, 447 F.2d at 206–07.[5] The trial judge did not err in concluding as a matter of law that Claude's actions constituted two occurrences under the policy and instructing the jury to that effect.[6] We overrule State Farm's eleventh point of error.

## LEGAL SUFFICIENCY

In six points of error, State Farm challenges the legal sufficiency of the evidence to support the jury's findings on (1) estoppel, (2) waiver, (3) negligence, (4) DTPA violations, (5) insurance code violations, (6) breach of the duty of good faith and fair dealing, (7) the amount of attorney's fees, and (8) whether State Farm acted knowingly. State Farm contends the evidence is legally insufficient to support the jury findings on these issues, and we must therefore reverse and render a take-nothing judgment. We disagree.

A legal sufficiency point is a question of law. In reviewing a legal sufficiency complaint, we consider only the evidence and inferences tending to support the jury's findings and disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988). We uphold the jury's findings if we find more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex. 1979).

## Estoppel

In its third point of error, State Farm contends the evidence is legally insufficient to support the jury's finding that State Farm was estopped from denying coverage. We disagree.

■ As a general rule, the estoppel doctrine will not create insurance coverage where none exists under the terms of the policy. *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex.1988) (op. on reh'g); *Minnesota Mut. Life Ins. Co. v. Morse*, 487 S.W.2d 317, 320 (Tex.1972). However, when an insurer assumes an insured's defense without obtaining a reservation of rights and with knowledge of facts indicating noncoverage, the insurer may be estopped from raising policy defenses. *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 521–22 (Tex.Civ. App.—Austin 1980, writ ref'd n.r.e.); *see Pacific Indem. Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169, 1173 (5th Cir.1973) (applying Texas law), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974). Estoppel requires a showing that the insured was prejudiced by the insurer's conduct. *See Em-*

---

5. *See also Liberty Mut. Ins. Co. v. Rawls*, 404 F.2d 880, 880–81 (5th Cir.1968) (holding that insured's acts in hitting one car and then, seconds later, hitting another constituted two separate "accidents" for purposes of insurance policy); *American Indem. Co. v. McQuaig*, 435 So.2d 414, 414–15 (Fla.Dist.Ct.App.1983) (holding that each gunshot was separate occurrence under homeowner's policy).

6. Additionally, we reject State Farm's argument that the instruction was an impermissible comment on the weight of the evidence. The court's charge in this case asked the jury to determine whether State Farm was liable for breaching its *Stowers* duty. *Stowers* liability could only exist if appellees' $600,000 settlement offer was within policy limits. *See Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 314 (Tex.1994); *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex.1994). In this case, the number of occurrences determined policy limits. Because the number of occurrences was necessary to determine whether appellees' settlement offer was within policy limits, we conclude the court's instruction was necessary to enable the jury to answer the *Stowers* question. Accordingly, the trial judge did not abuse his discretion in submitting the instruction to the jury.

*ployers Casualty Co. v. Tilley,* 496 S.W.2d 552, 560 (Tex.1973).[7]

The parties do not dispute that State Farm assumed the defense of Frances's estate without first obtaining a reservation of rights. Thus, we must determine whether the evidence is legally sufficient to support the jury's finding that (1) State Farm assumed the defense with knowledge of facts indicating noncoverage, and (2) the estate was harmed or prejudiced by State Farm's failure to reserve its rights regarding potential coverage defenses.

■ In this case, appellees presented considerable evidence indicating State Farm had knowledge of facts or circumstances indicating noncoverage. This evidence includes:

- a telephone communication to a State Farm claims adjuster from an attorney hired by State Farm to represent Frances's estate and a follow-up letter dated June 9, 1988 in which the attorney stated that a $600,000 judgment in the underlying case would be helpful "down the road when we get into the coverage fight."

- a State Farm claims adjuster's June 14, 1988 memorandum to a superior stating that accepting appellees' offer of an agreed judgment would leave only coverage issues to litigate. The memorandum also referred to "the coverage issue" that would remain after entry of the underlying judgment.

- a State Farm claims adjuster's note to himself that a reservation of rights against Frances's estate might be necessary.

Based on this evidence, we conclude there is some evidence to support the jury's finding that State Farm had knowledge of facts indicating noncoverage.

We reach a similar conclusion with respect to the jury's finding that Frances's estate was prejudiced by State Farm's conduct. The record in this case indicates that appellees offered to settle the claim against Frances's estate for $600,000. Frances's executor urged State Farm to accept the settlement. Nevertheless, State Farm repeatedly refused to accept the offer or undertake further negotiations on behalf of the estate. By not advising Frances's estate of its potential coverage defenses, State Farm deprived Frances's estate of the opportunity to (1) reject State Farm's offer of a qualified defense, (2) assume its own defense, and (3) accept appellees' $600,000 settlement offer. Instead, State Farm's actions resulted in the entry of a judgment against the estate in excess of $600,000.[8] This evidence presents some evidence of harm suffered by Frances's estate.

In reaching our decision, we necessarily reject State Farm's argument that Frances's estate was not harmed because appellees signed a covenant not to execute in favor of the estate. State Farm's argument is premised on the court's holding in *William M. Mercer, Inc. v. Woods,* 717 S.W.2d 391, 398 (Tex.App.—Texarkana 1986), *aff'd in part, rev'd in part on other grounds,* 769 S.W.2d 515 (Tex.1988). In *Woods,* the Texarkana Court of Appeals recognized that a covenant not to execute normally has the effect of discharging a judgment so that, in effect, no damages result from the judgment. *Woods,* 717 S.W.2d at 398.[9] We find *Woods* to be distinguishable from the instant case.

---

**7.** In this case, the trial judge instructed the jury that to find estoppel, it had to find:

  (1) State Farm assumed or continued the defense of the Frances Fulton Estate with knowledge of facts indicating noncoverage; and

  (2) the Frances Fulton Estate suffered harm or was prejudiced by State Farm's having defended without advising the Estate of its coverage defenses.

**8.** The judgment against Frances's estate appears to be in excess of $600,000 because it includes the value of all community assets in Frances's estate as of June 20, 1987. The judgment specifi-

cally finds that the homeowner's policy issued by State Farm was part of Frances's community estate as of that date. Thus, the judgment includes not only the policy limits, but also any other community assets in the estate over and above the policy.

**9.** We note the *Woods* court qualified this general rule by noting that such a covenant will not, ordinarily, "obviate the existence of damages when there is proof that an insured was forced to assign his rights against the insurer or other responsible part[y] to obtain that covenant." *Woods,* 717 S.W.2d at 398.

In *Woods*, the covenant not to execute was entered into informally by the parties before judgment was rendered in the underlying action. *See Woods,* 717 S.W.2d at 399. Thus, the defendant in *Woods* was never under a threat of having to pay the judgment. By contrast, in this case, the covenant not to execute was not obtained until two months *after* the judgment against the estate was entered. Thus, the insured in this case was faced with the threat of a judgment for at least a two-month period.

The supreme court has recognized that an unpaid judgment may cause injury to the judgment debtor regardless of whether any execution has issued on the judgment. *Street v. Honorable Second Court of Appeals,* 756 S.W.2d 299, 301 (Tex.1988) (orig.proceeding); *Montfort v. Jeter,* 567 S.W.2d 498, 499–500 (Tex.1978) (noting that unpaid judgment is some evidence of actual damages, even absent execution, because judgment "hang[s] over [judgment debtor's] head"); *Hernandez v. Great Am. Ins. Co.,* 464 S.W.2d 91, 94 (Tex.1971) (recognizing underlying judgment is source of injury and harm). In reaching this conclusion, the *Street* court explained that an unpaid judgment injures a judgment debtor not only because it affects the judgment debtor's credit, but also because it subjects his non-exempt property to sudden execution and forced sale. *Street,* 756 S.W.2d at 301 (quoting *Hernandez,* 464 S.W.2d at 94).[10]

Based on the authority cited above, we conclude the fact that Frances's estate was subject to execution on the judgment for a two-month period prior to execution of the covenant makes this case distinguishable from *Woods* and presents some evidence of harm suffered by the estate. State Farm has not presented any authority to the contrary. Because there is evidence the estate suffered harm during the two-month period, we reject State Farm's suggestion that the covenant not to execute completely negated any harm or prejudice in this case.[11] Accordingly, we overrule State Farm's third point of error.

Our conclusion that the evidence is legally sufficient to support the jury's estoppel finding makes it unnecessary for us to consider State Farm's first point of error challenging the legal sufficiency of the evidence to support the jury's waiver finding. *See* TEX. R.APP. P. 90(a).

## Negligence, DTPA, and Insurance Code Violations

In its thirteenth point of error, State Farm contends the evidence is legally insufficient to support the jury's findings that it (1) was negligent, and (2) engaged in any unfair or deceptive trade practices. State Farm contends these findings were premised on the jury's erroneous conclusion that State Farm negligently failed to settle within policy limits. State Farm contends the evidence is legally insufficient to support this finding because there was no evidence it received a settlement offer within policy limits. We disagree.

■ We have previously concluded that the events giving rise to the estate's liability constituted two occurrences under the policy. Because there were two occurrences, the policy limits available were $600,000. As noted previously, appellees offered to settle their claims against Frances's estate for $600,000. Because this offer was within policy limits, we conclude the evidence is legally sufficient

---

10. In *Street,* the supreme court cautioned that it could not "ignore the economic ramifications of an outstanding judgment on an outstanding judgment debtor's financial position." *Street,* 756 S.W.2d at 301.

11. Although State Farm contends that appellees' argument (that the underlying judgment presents some evidence of harm) was the "precise" argument rejected by the court in *Pennsylvania National Mutual Casualty Insurance Co. v. Kitty Hawk Airways, Inc.,* 964 F.2d 478 (5th Cir.1992), we disagree. In *Kitty Hawk Airways,* the Fifth Circuit concluded the insured suffered no harm as a result of the insurer's conduct because (1) the insurer sent its insured a reservation of rights letter *two years* before the underlying suit went to trial, and (2) the insured chose not to assume its own defense. *Kitty Hawk Airways, Inc.,* 964 F.2d at 482–83. Under those circumstances, we agree that no harm may be shown from the underlying judgment. However, in this case, Frances's estate was never given the opportunity to assume its own defense and possibly reach a more favorable settlement with appellees. Because *Kitty Hawk Airways* is factually distinguishable from the instant case, we do not find it persuasive.

to support the jury's finding that State Farm was liable for breaching its *Stowers* duty. We reject State Farm's arguments to the contrary. We overrule State Farm's thirteenth point of error.

## Bad Faith

In its sixteenth point of error, State Farm contends the evidence is legally insufficient to support the jury's finding that State Farm breached its duty of good faith and fair dealing in handling the claims against Frances's estate. Because there was no evidence presented showing State Farm acted in bad faith, State Farm contends the trial judge erred in denying its motion for judgment notwithstanding the verdict. We agree.[12]

The Texas Supreme Court recently held in *Maryland Insurance Co. v. Head Industrial Coatings & Services, Inc.*, 938 S.W.2d 27, 28–29 (Tex.1996) (per curiam) that an insurer owes its insured no duty of good faith and fair dealing to investigate and defend claims made by a third party against the insured. In that case, the insurer denied coverage and refused to defend its insured in a premises liability case filed against the insured. Refusing to recognize a duty of good faith and fair dealing under the facts before it, the supreme court held that "Texas law recognizes only one tort duty in [third-party insurance cases], that being the duty stated in *[G.A.] Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved)." *Maryland Ins.*, 938 S.W.2d at 28 (quoting *Soriano*, 881 S.W.2d at 318 (Cornyn, J., concurring)). Concluding that an insured's interests in a third-party case are adequately protected by the *Stowers* doctrine, the supreme court held that the duty of good faith and fair dealing did not apply.

This Court recently faced a similar issue in *Dear v. Scottsdale Insurance Co.*, 947 S.W.2d 908 (Tex.App.—Dallas 1997, writ requested). In *Dear*, the insured, a private investigator, obtained a professional liability insurance policy from Scottsdale. Dear was later sued by a client for actions taken in connection with an investigation, and Dear tendered defense of the suit to Scottsdale. Scottsdale ultimately assumed the defense and settled the case against Dear's wishes. When it did, Dear sued Scottsdale and others for various causes of action, including breach of the duty of good faith and fair dealing. The trial court ultimately granted summary judgment against Dear on all of his claims.

On appeal to this Court, we applied the court's reasoning in *Maryland Insurance* and concluded that Dear was not entitled to recover on his breach of the duty of good faith and fair dealing claim. *See Dear*, 947 S.W.2d at 913–14. We did so because the case involved a "thirdparty insurance claim" and, under the court's reasoning in *Maryland Insurance*, no such duty existed. *See Dear*, 947 S.W.2d at 914. At least two other appellate courts have reached similar conclusions in third-party cases. *See Trinity Universal Ins. Co. v. Bleeker*, 944 S.W.2d 672, 681 (Tex.App.—Corpus Christi 1997, n.w.h.); *Traver v. State Farm Mut. Auto. Ins. Co.*, 930 S.W.2d 862, 869–70 (Tex.App.—Fort Worth 1996, writ granted).

■ This case presents the precise situation faced by the supreme court in *Maryland Insurance* as well as by this Court in *Dear*. Here, as in *Maryland Insurance* and *Dear*, an insured was sued by a third party who sought to recover damages against the insured. The insured tendered the defense to the insurer, seeking both a defense and coverage under the insurance policy. Because the case involves claims made by a third party against an insured, this constitutes a "third-party insurance case." *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 53 n. 2 (Tex.1997) (noting that first-party claim is one in which insured seeks recovery for insured's own loss while third-party claim is one in which insured seeks coverage for injuries to third party); *Charter Roofing Co. v. Tri-State Ins. Co.*, 841 S.W.2d 903, 905 (Tex.

---

12. While we recognize the trial court did not award any damages based on the bad faith finding and, thus, that our conclusion with respect to the sufficiency of the evidence to support that finding would have no effect on the trial court's judgment, we nevertheless address the point because Wallace has raised the possibility of recovering on this alternative theory in his motion for rehearing.

App.—Houston [14th Dist.] 1992, writ denied) (recognizing that first-party claims are those involving damages suffered by insured whereas third-party claims are those involving claims made by third parties *against* insured). Accordingly, we conclude, as did the supreme court in *Maryland Insurance*, that State Farm owed no duty of good faith and fair dealing to its insured (Frances's estate) in this context. Accordingly, the evidence is legally insufficient to support the jury's finding of bad faith. We sustain State Farm's sixteenth point of error.

### "Knowingly"

In its twentieth point of error, State Farm contends the evidence is legally insufficient to support the jury's finding that State Farm acted "knowingly." We conclude State Farm has waived this point on appeal.

■ Rule 74(f) of the rules of appellate procedure requires an appellant to include in its brief on appeal "such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." *See* TEX.R.APP. P. 74(f). Failure to cite legal authority in support of a point of error constitutes a waiver of the point. *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 204 (Tex. App.—Dallas 1993, no writ); *D/FW Commercial Roofing Co. v. Mehra*, 854 S.W.2d 182, 189 (Tex.App.—Dallas 1993, no writ). Because State Farm has failed to cite any relevant facts or legal authority in support of its twentieth point of error, we conclude it has waived this point on appeal. We overrule State Farm's twentieth point of error.

### ACTUAL DAMAGES

In its seventh point of error, State Farm contends the trial judge erred in entering judgment as a matter of law for $4.25 million in actual damages. State Farm argues that a reversal is required because, under the

facts of this case, the trial judge was not authorized to assess damages as a matter of law. We agree.

In the court below, appellees obtained affirmative liability findings from the jury on their negligence, DTPA, and insurance code claims. However, in their motion for judgment on the verdict, appellees asked the trial court to enter damages as a matter of law based on these findings in the amount of the underlying judgment. The trial judge ultimately agreed to appellees' request and entered judgment against State Farm for $4.25 million. The question we must decide is whether the trial judge properly concluded, based on the court's reasoning in *Kelly*, that he could assess damages as a matter of law. We conclude he did not.

■ In *Kelly*, the Tyler Court of Appeals held that no actual damage question is required in a *Stowers* suit because the amount of actual damages in a *Stowers* claim is, as a matter of law, the amount of the excess judgment rendered against the insured in the underlying action. *Kelly*, 680 S.W.2d at 606.[13] *Kelly*, however, is distinguishable from this case because the underlying judgment in *Kelly* did not, as here, contain language limiting the judgment's enforceability. In *Kelly*, a simple mathematical calculation provided the difference between the policy limits and the amount of the underlying judgment and, thus, the amount of the "underlying judgment" to be assessed "as a matter of law" in a later suit against the insurer. By contrast, the face of the judgment in this case does not allow a trial court to determine the amount of the underlying judgment against the insured.[14] Instead, it requires a determination of the existence and value of certain assets. This is clearly a fact issue for the jury to resolve, and the presence of this fact issue precluded the trial judge from awarding damages "as a matter of law."[15]

---

13. The *Kelly* court also applied this rule to "*Stowers* claims" brought under the DTPA and insurance code. *See Kelly*, 680 S.W.2d at 606.

14. We think it beyond question that the extent and potential harm of a judgment whose enforcement is limited to only certain assets cannot be

determined from the face of the judgment alone and without reference to those assets.

15. Although appellees also argue in their supplemental briefs to this Court that the supreme court's recent decision in *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996) supports the trial court's decision to award

We sustain State Farm's seventh point of error.

■ Having concluded that the trial judge erred, we must next determine the effect of this erroneous ruling. Here, the court's charge did not include a question regarding the amount of damages, if any, sustained by Frances's estate as a result of State Farm's negligent or deceptive conduct. However, the record reflects that appellees tendered a question to the trial court on the amount of damages recoverable under the negligence, DTPA, and insurance code theories.[16] While not exactly a model of clarity, this question was sufficient to put the trial judge on notice that the charge failed to contain any damage question relating to appellees' negligence, DTPA, and insurance code claims. Under the supreme court's more recent interpretation of the jury charge rules, we conclude the requested damage question was sufficient to preserve error on the court's omission of a damages question from the charge. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) (op. on reh'g) (noting that (1) test for determining if party has preserved error in jury charge should be whether party made trial court aware of complaint, and (2) jury charge rules should be applied to serve rather than defeat this principle); *see also Matthiessen v. Schaefer*, 900 S.W.2d 792, 797–98 (Tex. App.—San Antonio 1995, writ denied) (applying *Payne* test).

Here, the trial judge concluded, based on the evidence presented, that appellees were entitled to submission of a negligence, DTPA, and insurance code question to the jury. Having concluded that some evidence was presented warranting submission of these charges, the trial judge should have contemporaneously submitted a damage question to the jury based on these theories of liability. *See* Tex.R. Civ. P. 278; *see also Cianfichi v. White House Motor Hotel*, 921 S.W.2d 441, 443 (Tex.App.—Houston [1st Dist.] 1996, writ denied) (noting that trial court must submit requested questions if pleadings and evidence support them); *Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 561 (Tex.App.—Houston [1st Dist.] 1995, no writ) (recognizing that refusal to submit jury question is only proper if no evidence exists warranting submission of question). Appellees timely tendered a damage question to the trial court, and we therefore conclude they have preserved their right to have the jury assess damages on these claims. Accordingly, we must reverse the trial court's judgment and remand this cause for a new trial. *See, e.g., Collins v. Beste*, 840 S.W.2d 788, 790–91 (Tex.App.—Fort Worth 1992, writ denied) (reversing and remanding case in part where appellant not only presented evidence on defensive theory, but also requested question on defensive theory in substantially correct form).

Our disposition of State Farm's third, seventh, eleventh, thirteenth, sixteenth, and twentieth points of error makes it unnecessary for us to address State Farm's remaining points of error. Likewise, we need not address appellees' cross-points of error complaining of error in the court's charge. *See* Tex.R.App. P. 90(a). For the reasons stated, we reverse the trial court's judgment and

damages as a matter of law, we disagree. Appellees focus on language in the *Gandy* opinion which states that when a settlement occurs following a "fully adversarial trial," the value of the plaintiff's claim "can be taken to be the amount of the judgment obtained." *Gandy*, 925 S.W.2d at 713. However, nothing in the *Gandy* opinion suggests that the court there was considering a situation, like the one before us, where the underlying judgment was one of "limited enforceability" and, thus, was not subject to a simple mathematical calculation. Because the face of the underlying judgment in this case did not allow for a simple determination of the amount of damages assessed against Frances's estate, we conclude this case is distinguishable from the situation described in *Gandy* and that *Gandy* is therefore not controlling.

16. Appellees' requested question read as follows:

What amount of money, if any, if now paid in cash would fairly and reasonably compensate the estate of Frances Fulton for its damages, if any, that resulted from any conduct of State Farm you have found, if any.

Answer in dollars & cents, if any[.]

During the charge conference, Wallace's attorney made clear that he intended this damage question to "follow all of the liability questions pertaining to" Frances's estate. Although the written request as well as the statements during the charge conference were all made by Wallace's attorney, Williams's attorney joined in the request.

remand this cause to the trial court for a new trial.