Charles FOUST, Bobby R. McDaniel, Bobby McDaniel, Robert E. McDaniel, and James E. McDaniel, Appellants,

v.

RANGER INSURANCE COMPANY, Appellee.

No. 04–97–00714–CV.

Court of Appeals of Texas, San Antonio.

Feb. 27, 1998.

Rehearing Overruled March 27, 1998.

Adolfo E. Cordova, Jr., Crane & Cordova, San Benito, for Appellants.

Kevin W. Vice, Lewis R. Sifford, Sifford & Anderson, L.L.P., Dallas, Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

This is an appeal from the award of summary judgment in a declaratory judgment action brought by the appellee insurance company. The case involves chemical damage to the appellants' cotton crop which occurred when an adjoining field was being sprayed with herbicide. The insurance company insured the owner/operator of the crop dusting company that applied the herbicide. The trial court entered a declaratory judgment, finding that the damages alleged were the result of a single occurrence. In two points of error, the appellants contend that the trial court lacked jurisdiction to enter the declaratory judgment and that the trial court erred in holding that only one occurrence was the cause of the appellants' damages. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellants, Charles Foust, Bobby R. McDaniel, Bobby McDaniel, Robert E. McDaniel, and James E. McDaniel (the McDaniels), are individuals who engage in farming and ranching operations in and around Kinney County, Texas. In 1994, the

McDaniels had a cotton crop growing on various tracts of land, several of which abutted land owned and farmed by Walters Farms.

In May of 1994, Walters Farms retained the services of Russell Lindeman d/b/a Rusty's Flying Services (Lindeman) to aerially apply a herbicide to the milo crop on Walters Farms property. The herbicide that was to be applied is dangerous to cotton. Lindeman applied the herbicide with a crop dusting airplane on May 14, 1994. During the aerial application, some of the herbicide drifted from the target area onto various tracts of land being farmed by the McDaniels. The herbicide caused severe damage to the McDaniels's cotton crop, greatly reducing the cotton yield. The McDaniels sued Lindeman, a representative of Walters Farms, and the manufacturer of the herbicide for loss of income they suffered as a result of their damaged cotton crop (Underlying Litigation).

In February of 1994, appellee, Ranger Insurance Company (Ranger), issued to Lindeman an aircraft insurance policy which covered claims resulting from the aerial application of chemicals and seeds in connection with Lindeman's business. The limits of liability under the policy are $100,000 per occurrence and $200,000 per policy period. After being notified of the Underlying Litigation, Lindeman requested coverage from Ranger. Ranger acknowledged Lindeman's claim and employed counsel to represent Lindeman in the Underlying Litigation.

During settlement negotiations between Ranger and the McDaniels, a dispute arose regarding whether the damage at issue was caused by a single occurrence or by multiple occurrences under the terms of the policy. Ranger filed this declaratory judgment action, asking the trial court to determine that Lindeman's alleged conduct constituted a single occurrence and, accordingly, the limit of Ranger's liability under the policy is $100,-000. The McDaniels filed a motion to dismiss the declaratory judgment action for lack of jurisdiction and Ranger filed a motion for summary judgment. The trial court denied the McDaniels's motion to dismiss and granted Ranger's motion for summary judgment, finding, as a matter of law, that Lindeman's

application of the herbicide on May 14, 1997, amounted to a single occurrence under the terms of the Ranger policy.

## ARGUMENT AND AUTHORITY

### A. Jurisdiction

█ In their first point of error, the McDaniels contends that the trial court erred in denying their motion to dismiss the declaratory judgment action for lack of jurisdiction. Specifically, the McDaniels claim that the relief sought and obtained by Ranger via its declaratory judgment action was an advisory opinion regarding Ranger's liability in a case that had yet to be tried. The Uniform Declaratory Judgment Act sets limits on the subject matter of declaratory judgment actions as follows:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). Accordingly, the Uniform Declaratory Judgment Act operates to provide an individual whose rights and legal relations are at issue in a contractual dispute a vehicle by which he can solicit the court to resolve questions of construction or validity under the contract. *Nat'l County Mut. Fire Ins. Co. v. Johnson,* 829 S.W.2d 322, 324 (Tex.App.—Austin 1992), *aff'd,* 879 S.W.2d 1 (Tex.1993).

█ However, the Act does not empower the courts to render advisory opinions. *California Products, Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780, 781 (Tex.1960). The courts may not review hypothetical or contingent situations, or determine questions not currently essential to the decision of an actual controversy. *Firemen's Ins. Co. of Newark v. Burch,* 442 S.W.2d 331, 333 (Tex.1968). Specifically, any judgment attempting to declare the liability

of an insurance company relating to damages that *might be* assessed against the insured in an underlying case is advisory and beyond the power and jurisdiction of the trial court to render. *Id.* at 332–33; *see J.E.M. v. Fidelity & Cas. Co. of New York,* 928 S.W.2d 668, 671–72 (Tex.App.—Houston [1st Dist.] 1996, no writ) (following *Burch).*[1]

In the present case, the McDaniels contend that the declaratory judgment at issue established Ranger's liability under the insurance policy because, by declaring that Lindeman's actions constituted only a single occurrence, the court determined that Ranger was only obligated to indemnify Lindeman up to $100,000 for any judgment that might be rendered against him in the Underlying Litigation. Because liability has yet to be established against Lindeman, the McDaniels contend that the trial court's judgment declaring Ranger's liability under the policy is based upon a hypothetical and is, therefore, purely advisory in nature.

Ranger argues that the declaratory judgment action at issue does not involve Ranger's duty to *indemnify* Lindeman, but that the issue to be decided is Ranger's duty to *defend* Lindeman. Ranger contends that the question in this case is Ranger's duty to defend because the trial court's decision affected whether the "tender and walk"[2] provision of the insurance policy would be triggered by any offer made by Ranger to settle for $100,000. According to Ranger, because the court's declaration in this case determined the extent of Ranger's duty to defend, it affected the rights, status, and legal relationship between the parties, and therefore, addressed a justiciable controversy. *See Burch,* 442 S.W.2d at 332 (holding "the question of [an] insurance company's duty to de-

fend present[s] a justiciable issue."); *J.E.M.,* 928 S.W.2d at 671 (stating "whether an insurer has a duty to defend presents a justiciable question suitable for a declaratory judgment action."); *Johnson,* 829 S.W.2d at 324 (noting that the existence of an insurer's duty to provide a defense under an insurance policy is an appropriate question to be determined in a declaratory judgment action).

■ The declaratory judgment at issue here simply states, "the alleged conduct of the insured constitutes only one occurrence under Ranger Insurance Company Policy No. AG60358." If Lindeman's conduct constitutes only one occurrence under the terms of the policy, the limit of Ranger's liability under the policy is $100,000. In light of the "tender and walk" provision in the policy, we agree with Ranger that the trial court's determination necessarily resolved any question regarding the extent of Ranger's duty to defend Lindeman. It does not however, resolve any question or make a determination regarding Ranger's duty to indemnify Lindeman. The judgment does not state that Ranger *will have* to pay Lindeman the limits of the policy, it simply defines those limits. Further, there is no need for there to be a determination of liability in the underlying suit before a determination can be made regarding whether the terms of the insurance policy at issue contemplate a single occurrence or multiple occurrences when a crop dusting airplane makes several passes over a target area and stops to reload while performing a job. Therefore, the resolution of the issue in this case is not based on hypotheticals or contingencies.

■ Accordingly, and by the very terms of the Uniform Declaratory Judgment Act,

---

1. We note that the Texas Supreme Court recently carved out an exception to the *Burch* rule in *Farmers Texas County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81 (Tex.1997). However, the *Griffin* holding does not, as Ranger suggests, overrule *Burch.* In *Griffin,* the court held that "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." Id.* at 84 (emphasis in original). The *Griffin* exception does not apply in this case because Ranger has an uncontested

duty to defend Lindeman in the Underlying Litigation.

2. The insurance policy at issue contains a provision that operates to absolve Ranger of its duty to defend Lindeman if Ranger has tendered the limits of liability under the policy. Specifically, the provision provides that Ranger will defend Lindeman against any claim or legal action brought against him resulting from a covered occurrence *"as long as [Ranger] has not paid, offered to pay, or tendered the limits of liability"* purchased by Lindeman.

whether the facts of this case involve one or many occurrences under the terms of the contract presents a justiciable question suitable for declaratory judgment action. *See Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 735 (Tex.1990) (reviewing declaratory judgment which determined policy limits under an insurance contract); *Preferred Risk Mut. Ins. Co. v. Watson*, 937 S.W.2d 148, 148 (Tex.App.—Fort Worth 1997, writ denied) (reviewing declaratory judgment involving determination of whether facts of case constituted a *single occurrence under* terms of insurance policy). The trial court's judgment clarified the rights of the parties under the contract, and therefore, the trial court did not err in denying the McDaniels's motion to dismiss the declaratory judgment action for lack of jurisdiction. The McDaniels's first point of error is overruled.

## B. Number of Occurrences

In their second point of error, the McDaniels contend that the trial court erred in finding, as a matter of law, that their damages were caused by only one occurrence. The insurance policy at issue provides that Ranger will indemnify Lindeman up to $100,000 per occurrence and up to $200,000 per policy period for any property damage resulting from the aerial application of chemicals and seeds during the policy period. The insurance contract defines occurrence as follows:

> Occurrence means a *sudden event* or *repeated exposure to conditions* involving the aircraft during the policy period, neither expected or intended by [Lindeman], that causes bodily injury or property damage to others during the policy period. *All bodily injury or property damage resulting from the same general conditions will be considered to be caused by one occurrence.* (emphasis added)

Ranger argues that the property damage suffered by the McDaniels when Lindeman applied herbicide to Walters Farms' property was a result of repeated exposure to the same general conditions, and was, therefore, caused by a single occurrence under the terms of the policy. The summary judgment evidence, consisting of responses to requests for admission and deposition excerpts, indicates the following:

- Lindeman applied herbicide to the target field pursuant to his obligation under a contract between himself and Walters Farms which provided that Lindeman would be paid a sum certain for crop dusting certain tracts of Walters Farms' property with a herbicide purchased by Walters Farms.
- Lindeman considered the application of the herbicide to be a single event.
- The entire application was done with one plane and took less than three hours. During those three hours, there was some variation in the air temperature. There also may have been some variation in wind direction and velocity.
- Lindeman made numerous passes over the target field. The chemical delivery system was activated with each pass and deactivated after each pass. During each pass, the altitude at which the plane flew differed.
- It was necessary for Lindeman to land the plane more than one time during the application process in order to reload it with herbicide.
- The application of the herbicide affected crops in more than one field.

The McDaniels contend that the trial court erred in finding that the damages resulted from repeated exposure to the same general conditions because the evidence establishes that the conditions during the application process were constantly changing. Specifically, the McDaniels note that the application of the herbicide occurred over the course of three hours, that the plane's altitude varied, and that the temperature and wind changed. Further, the plane landed and reloaded several times. The McDaniels argue that the time it took for the plane to reload allowed the previously released herbicide to dissipate. Therefore, according to the McDaniels, each return to the sky created a new cloud of damaging herbicide and a separate condition. The McDaniels contend that, because the insurance policy requires a single occurrence to result from "the same general conditions," a finding of a single occurrence cannot be supported under these facts.

The McDaniels rely on *American Indem. Co. v. McQuaig,* 435 So.2d 414 (Fla.Dist.Ct. App.1983). In that case, a homeowner fired three random shots from a shotgun, injuring two police officers. In addressing whether the homeowner's action constituted one or more occurrences, the court held that each individual blast was the cause of an injury, and therefore, there were three occurrences. *Id.* at 415–16. An identical question was recently addressed in Texas. In *State Farm Lloyds, Inc., et. al v. Williams,* 960 S.W.2d 781 (Tex.App.—Dallas 1997, writ filed), the insured shot his wife, her daughter, and her granddaughter before shooting himself. The court held that the injuries sustained resulted from separate gunshots, each giving rise to liability; therefore, there were multiple occurrences under the policy.[3] *Id.* at 783. The McDaniels analogize this type of situation to the case at hand by claiming that each "blast" of herbicide Lindeman administered was a separate cause of injury.

*Williams* is distinguishable from this case, however, because the insurance policy at issue in *Williams* did not define the term "occurrence." Accordingly, the court held that the term was ambiguous and construed it in favor of the insured. *See id.* (citing *Gonzalez,* 795 S.W.2d at 737). In this case, the policy at issue clearly defines the term occurrence to be either "a sudden event" or "repeated exposure to [the same general] conditions." Other courts have been faced with the task of construing insurance policies containing virtually identical definitions of "occurrence." In *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56 (3rd Cir. 1982), the court analyzed the following definition of the term "occurrence":

> The term "occurrence" means an accident or a happening or event or a continuous or repeated exposure to conditions which ... results in ... personal injury, property damage, or advertising liability during the policy period. All such exposure to substantially the same general conditions ex-

isting at or emanating from one premises location shall be deemed one occurrence. *Id.* at 59. In *Appalachian,* the court held that a discriminatory employment policy did not result in a new occurrence each time an employee was discriminated against. *Id.* at 61. Instead, the company's adoption of the discriminatory policy constituted a single occurrence because each injury stemmed form the same condition—the policy. *Id.*

In *Transport Ins. Co. v. Lee Way Motor Freight, Inc.,* 487 F.Supp. 1325 (N.D.Tex. 1980), the court construed an insurance policy containing a definition of occurrence identical to the definition addressed by the *Appalachian* court. Particularly, the policy provided that "[a]ll such exposure to substantially the same general conditions ... shall be deemed one occurrence." *Id.* at 1329. The court in *Lee Way* was asked to determine whether a company's pattern of employment discrimination constituted a single occurrence under the terms of the policy. The court noted that, while each claimant was exposed to the same policy of discrimination at a different time and place, the language of the policy is clear in its intent that all exposure to the same condition is deemed one occurrence. *Id.* Therefore, the court held that the pattern and practice of discrimination created substantially the same general conditions, and that exposure to the discrimination must, therefore, be deemed one occurrence. *Id.*

The "same general conditions" provision seems to be the controlling factor in *Appalachian, Lee Way* and similar cases, as at least one Texas state court has acknowledged. In *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252 (Tex. App.—Dallas 1993, writ denied), the court held that there were multiple occurrences where damages arose from the sale of several condominiums. The insurer in that case relied on *Appalachian* and other cases involving "same general conditions" provisions. However, the insurance policy at issue did not involve such a provision. It is on this

---

**3.** The court in *Williams* relied on *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.,* 447 F.2d 204, 207 (5th Cir.1971), which held that multiple sales of contaminated birdseed resulted in multiple occurrences under an insurance poli-

cy, despite the fact that the birdseed was contaminated on only one occasion, because liability arose from the sale of the seed not from its contamination.

basis that the *Cullen/Frost* court distinguished *Appalachian* and similar cases. The court held that "[t]he policies arising out of these ... cases provided that all damages arising out of exposure to substantially the same general conditions were considered as arising out of one occurrence....In contrast, the policies at issue here do not provide that all exposure to the same condition constitutes a single occurrence. Thus, our policies do not, by their terms, prevent there being multiple occurrences." *Id.* at 257.

The holding in *Cullen/Frost* seems to indicate that where a policy contains a provision that all injury or damage resulting from the same general conditions shall be considered to be caused by one occurrence, the terms of such provision should be strictly construed. As the court in *Lee Way* noted, "these words must be given their plain meaning and not construed in a technical or limited sense." *Lee Way*, 487 F.Supp. at 1329.

The court's holding in *Uniroyal, Inc. v. Home Ins. Co.*, 707 F.Supp. 1368 (E.D.N.Y. 1988), is instructive. In *Uniroyal*, the court addressed whether 110 separate deliveries of Agent Orange to the United States Air Force in Vietnam constituted one occurrence under the manufacturer's insurance policy. The court held that the number of deliveries was "happenstance," determined by the size of the available transport vehicles. *Id.* at 1383. Reasoning that the deliveries were all part of a routinized, repetitive process, the court determined that the damages at issue resulted from one continuous or repeated exposure to conditions. *Id.* Similarly, in this case, the fact that Lindeman was forced to land so that he could reload herbicide was "happenstance," determined by the size of the plane's tanks and by the amount of acreage he was contracted to spray.

█ We conclude that the damage to the McDaniels's cotton crop resulted from repeated exposure to the same general conditions—the drift of a herbicide which was being applied to crops on adjoining property on May 14, 1994. The McDaniels argue that the application of the herbicide in this case does not fall under the "same general conditions" provision because conditions, such as temperature, wind, and altitude, were con-

stantly changing during the application process. However, these changes are specific and incidental. They can not, therefore, be relied upon as evidence that the application of the herbicide on May 14, 1994, did not occur under the same general conditions. Likewise, a new occurrence did not result each time Lindeman returned to the air after landing the plane to reload it with herbicide. Rather, each pass resulted in the creation of the same general conditions.

The herbicide was applied one time, in a process that required several passes over various tracts of land. The application process constituted a single procedure, and it is this procedure as a whole that caused the damage to the McDaniels's cotton crop. In other words, the process of applying herbicide to Walters Farms' property created the "general condition" which damaged the McDaniels's cotton. Accordingly, the damage was the result of a single occurrence under the terms of the Ranger policy at issue. The McDaniels's second point of error is overruled.

The judgment of the trial court is affirmed.