March 27, 2003

The Honorable Kevin Bailey
Chair, Committee on General Investigating
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0050

Re: Whether, for purposes of section 155.003 (c)(1) of the Occupations Code, an international medical school graduate who trained in the United States in a program of graduate medical education that is accredited in a particular specialty but not accredited in the related subspecialty in which the graduate received training has received medical education from a program accredited "in the same subject" as the specialty (RQ-0621-JC)

Dear Representative Bailey:

Your predecessor asked whether, for purposes of section 155.003(c)(1) of the Occupations Code, an international medical school graduate who trained in the United States in a program of graduate medical education that is accredited in a particular specialty but not accredited in the related subspecialty in which the graduate received training has received medical education from a program accredited "in the same subject" as the specialty.[1] See TEX. OCC. CODE ANN. § 155.003(c)(1) (Vernon 2003). Throughout this opinion, the term "international medical school" refers to a medical school located outside the United States and Canada.

The Texas State Board of Medical Examiners ("the Board") is authorized by statute to issue a license to practice medicine to an international medical school graduate who received part of his or her medical education through a graduate medical education program in the United States accredited by the Accreditation Council for Graduate Medical Education ("ACGME"). See TEX. OCC. CODE ANN. § 155.003(b)-(c) (Vernon 2003). Representative Gallego explained that the ACGME may accredit a medical training program in one of twenty-four medical specialties, and approximately one hundred subspecialties are recognized within those specialties. See Request Letter, supra note 1, at 1. For example, the specialty field of internal medicine encompasses

---

[1]See Letter from Honorable Pete P. Gallego, Chair, Committee on General Investigating, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General, at 2 (Oct. 10, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

sixteen subspecialties, including adolescent medicine, cardiovascular disease, hematology, and rheumatology.[2]

Until recently, the Board construed relevant statutes and rules to authorize it to license an international medical school graduate who "completed subspecialty training [in a program] accredited [by the ACGME] in specialty training . . . but not accredited in subspecialty training." Request Letter, *supra* note 1, at 2. Although the Board has not changed its rules, Representative Gallego indicated that the Board now denies licensure to such a graduate, however. *See id.* at 2. Representative Gallego therefore asked whether the Board may deny a medical license because the subspecialty training occurred "in a hospital or teaching institution sponsoring or participating in a program of a graduate medical education accredited by the ACGME or the Board in a specialty but not in a subspecialty." *Id.*

The Medical Practice Act ("the Act"), title 3, subtitle B of the Occupations Code, prohibits any person from practicing medicine in this state unless the person has obtained a license from the Board. *See* TEX. OCC. CODE ANN. § 155.001 (Vernon 2003); *see also id.* § 151.001 (titling act). Under section 155.003(c), an applicant whose medical education has not been accredited by an accrediting body recognized by the United States Department of Education may be eligible for "an unrestricted license" if the applicant

> received medical education in a hospital or teaching institution sponsoring or participating in a program of graduate medical education accredited by the Accreditation Council for Graduate Medical Education, the American Osteopathic Association, or the board *in the same subject* as the medical or osteopathic medical education as defined by board rule . . . .

*Id.* § 155.003(c)(1) (emphasis added); *see id.* § 155.003(b) (conditioning eligibility for license on accredited medical education in United States); 22 TEX. ADMIN. CODE § 163.11(c) (2002) (Texas State Board of Medical Examiners, Active Practice of Medicine) (distinguishing between restricted and unrestricted licenses).

Under Board licensing rules, adopted in accordance with the Act's directives, *see* TEX. OCC. CODE ANN. § 153.001(3) (Vernon 2003) (authorizing Board to adopt rules necessary to regulate medical practice), an international medical school graduate may be eligible for an unrestricted medical license if he or she received medical education in the United States at

> a hospital or teaching institution [s]ponsoring or participating in a program of graduate medical education accredited by the Accrediting Council for Graduate Medical Education, the American Osteopathic Association, or the Texas State Board of Medical Examiners *in the*

---

[2]*See* THE AMERICAN BOARD OF MEDICAL SPECIALTIES, RESEARCH & EDUCATION FOUNDATION, *Which Medical Specialist for You* 10-13 (revised Apr. 2002), *available at* http://www.abms.org/publications.asp.

> *same subject* as the medical or osteopathic medical education if the
> hospital or teaching institution has an agreement with the applicant's
> school.

27 Tex. Reg. 10277 (2002) (to be codified as an amendment to 22 TEX. ADMIN. CODE § 163.1(13)(G)(i) (2002)) (Texas State Board of Medical Examiners, Licensure) (renumbered as 22 TEX. ADMIN. CODE § 163.1(12)(K)(i)) (emphasis added).

The issue is whether, for purposes of section 155.003 of the Occupations Code and renumbered section 163.1(12)(K), title 22, of the Administrative Code, a specialty is "the same subject" as a subspecialty within the specialty. *See* Request Letter, *supra* note 1, at 2; *accord* Letter from Jennifer A. Soffer, Assistant General Counsel, Texas State Board of Medical Examiners, to Susan D. Gusky, Chair, Opinion Committee, Texas Attorney General (Dec. 13, 2002) (on file with Opinion Committee) [hereinafter Board Letter].

The phrase "same subject" in the context of section 155.003 of the Occupations Code and the corresponding rule connotes a single field of study in terms of the specificity of the topics included. The Act and its explicating rules must be construed to protect the public against unqualified persons attempting to practice medicine. *See* TEX. OCC. CODE ANN. § 151.003(1) (Vernon 2003) (articulating legislative finding that practice of medicine must be regulated to protect public interest); *see also Ex parte Halsted*, 182 S.W.2d 479, 482 (Tex. Crim. App. 1944) (noting that legislature adopted Medical Practice Act under its general police power to protect public health). Neither the statute nor the rules define the phrase "same subject," and no court has considered the meaning of the phrase in this context. The word "same" suggests singularity or identity. *See Foust v. Ranger Ins. Co.*, 975 S.W.2d 329, 335 (Tex. App.–San Antonio 1998, pet. denied); *State v. Simmons*, 573 S.E.2d 856, 860 (S.C. Ct. App. 2002); *State v. Watson*, 51 P.3d 66, 70 (Wash. 2002) (en banc); *see also* XIV OXFORD ENGLISH DICTIONARY 427-29 (2d ed. 1987). The word "subject" in this context denotes a field of study or of science. *See State ex rel. Harrington v. Randle*, 35 So. 2d 84, 85 (Ala. 1948); *see also Indep. Sch. Dist. No. 25 v. Smith*, 463 P.2d 332, 333 (Okla. 1969); *Jacoby v. McNamara*, 83 N.Y.S.2d 763, 767 (N.Y. Sup. Ct. 1948); XVII OXFORD ENGLISH DICTIONARY 27-30 (2d ed. 1987).

Although the subject matter of a subspecialty may be subsumed within the subject matter of a specialty, they are not the "same subject" because they differ in breadth and specificity. Basic training for a physician specialist "includes four years of premedical education in a college or university, four years of medical school, and after receiving the M.D. degree, at least three years of specialty training under supervision (called a 'residency')."[3] Subspecialty training, which increases a specialist's "depth of knowledge and expertise," requires "an additional one to three years."[4] The ACGME defines the term "general specialty program" as a "primary specialty . . . to which

---

[3] THE AMERICAN BOARD OF MEDICAL SPECIALTIES, RESEARCH & EDUCATION FOUNDATION, *supra* note 2, at 1.

[4] *Id.*; *accord* AMERICAN MEDICAL ASSOCIATION, *Becoming an MD*, available at http://www.ama-assn.org/ama/pub/printcat/2320.html.

subspecialty programs are attached."[5]  A "subspecialty program," according to the accrediting agency, "[p]rovides advanced [graduate medical education] in a narrow field of study within a medical specialty."[6]  A subspecialty program must be accredited by the accrediting agency, and in some cases, the accreditation of a particular teaching institution's subspecialty program is independent of the related specialty program's accreditation.[7]

Given these distinctions, we conclude that a specialty and a subspecialty within that specialty are not the "same subject" for the purposes of section 155.003(c)(1) of the Occupations Code and the Board's rules.  Accordingly, the Board may decline to license an international medical school graduate who trained in the United States in a program of graduate medical education that is accredited in a particular specialty but not accredited in the related subspecialty in which the graduate received training.  Whether the graduate's training in the accredited specialty is sufficient to issue an unrestricted license under section 155.003(c)(1) is a question of fact for the Board to resolve.  *See* Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that opinion process does not determine facts).

Representative Gallego also asked whether the Board currently may adopt a policy of denying licensure to such international medical school graduates when, under the Board's previous interpretation of relevant statutes and rules, it would have issued a license.  *See* Request Letter, *supra* note 1, at 2.  The Board, in its letter to this office, "acknowledges" that it has interpreted the term "same subject" inconsistently "over the years with regard to whether all medical education, specialty and subspecialty training, . . . must be ACGME[-]approved."  Board Letter, *supra* p. 4, at 2.  Yet, continues the Board's letter, "changes in the Board's executive directors and Board members occasionally lead to different statutory interpretations."  *Id*.

The Board's current interpretation comports with the plain meaning of the phrase "same subject" in section 155.003(c)(1) of the Occupations Code.  A court may defer to an agency's interpretation of a statute the agency administers unless the agency's interpretation is unreasonable.  *See In re Am. Homestar of Lancaster*, 50 S.W.3d 480, 490-91 (Tex. 2001).  While the fact that an agency has interpreted the same statute differently over the years may provide some evidence that the current interpretation is unreasonable, it does not establish unreasonableness as a matter of law.

---

[5]ACGME, Web Accreditation Data System Glossary, *available at* http://www.acgme.org/adspublic/glossary/glossary.asp (defining "general specialty program").

[6]*Id*. (defining "general specialty program").

[7]*See id*.

# S U M M A R Y

The Texas State Board of Medical Examiners may decline to license an international medical school graduate who received training in the United States in a graduate medical education program that is accredited in a particular specialty but not accredited in the subspecialty in which the applicant trained. A specialty and a subspecialty within it are not the "same subject" for the purposes of section 155.003(c)(1) of the Occupations Code and related rules. Whether such a graduate completed sufficient training in the accredited specialty to be eligible for licensing on that basis is a question of fact for the Board to resolve.

The fact that an agency charged with administering a particular statute has interpreted the statute differently over the years does not mean, as a matter of law, that the agency's current interpretation is unreasonable.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - General Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee