Clark PHIPPEN, Four Star Rv and Marine, Inc., Moped Traveland, Inc., and James Ted Williams, Appellants,

v.

DEERE AND COMPANY, Successor In Interest To John Deere Company, Appellee.

No. 06–97–00077–CV.

Court of Appeals of Texas, Texarkana.

Argued Jan. 28, 1998.

Decided March 17, 1998.

Walter D. Snider, Snider, Donaldson & Wolfrom, Beaumont, for Appellants Phippen and Four Star RV.

Warren G. Clark, Provost & Umphrey, Port Arthur, for Appellants Moped and Williams.

Ron H. Moss, Graves, Doughery, Hearon, Moody, Austin, for Appellee Deere.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

This appeal arises from a business transaction between Moped Traveland, Inc. and Deere and Company. In March 1991, Deere financed Traveland's purchase of motor homes from Monaco, a manufacturer of recreational vehicles. Traveland defaulted on repayment of the loan on one of the vehicles, number 18053, and Deere filed suit against Traveland, James T. Williams (Traveland initial president and sole initial stockholder), Four Star RV and Marine, Inc. (Traveland successor corporation), and Clark Phippen (Traveland creditor and successor to Williams as president and majority shareholder of Traveland) for recovery on a floor plan note on that vehicle. The jury found all defendants (appellants) jointly and severally liable for actual damages of $135,524.00 plus prejudgment interest and attorneys' fees. The jury also assessed exemplary damages of $75,000.00 against Phippen and $25,000.00 against Williams. The trial court rendered judgment on the jury's verdict, and we affirm that judgment.

In this appeal, Traveland and Williams raise two points in which they contend that the trial court erred:

(1) in overruling their motion for new trial because the judgment is based on a defective verdict; and

(2) in overruling their motion for judgment notwithstanding the verdict and motion for new trial because no evidence or, in the alternative, insufficient evidence, supports the jury's answers to questions 2 and 5.

In a separate brief, appellants Phippen and Four Star ("Phippen") raise a total of twenty-one points of error.

■ In points (5), (18), and (19), Phippen urges that the trial court erred:

-in failing to sustain appellants' objection to the submission of jury question 22 because the question was defective and a comment on the weight of the evidence;

-in overruling appellants' objection to the general instructions that a corporation acts by and through its employees because such instruction was a comment by the court that the corporate entity and the individual was one and the same; and

-in rejecting appellants' requested instructions to the jury.

However, Phippen has not cited to any part of the record, as required by TEX.R.APP. P. 38.1(h), nor has he cited any legal authorities in support of these three points. Failure to cite legal authority in support of a point constitutes a waiver of the point, *State Farm Lloyds, Inc. v. Williams,* 960 S.W.2d 781, 788–89 (Tex.App.—Dallas 1997, n.w.h.); *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 204 (Tex.App.—Dallas 1993, no writ), as does failure to cite to portions of the record which support the point. *St. Paul Med. Ctr. v. Cecil,* 842 S.W.2d 808, 816–17 (Tex.App.—Dallas 1992, no writ). Accordingly, Phippen has waived error, if any, and these three points are overruled.

■ The contentions made by Phippen in four additional points must also be disregarded because they do not comport with the contentions made at trial. These points are (7), (9), (12), and (14), wherein Phippen contends that the trial court erred in overruling appellants' objections to jury questions 9, 10, 15, and 18 because each of those questions was defectively worded and a comment on the weight of the evidence. If an error raised on appeal does not comport with the objection made at trial, the error, if any, is waived. *See Federal Deposit Ins. Corp. v. Golden Imports, Inc.,* 859 S.W.2d 635, 641 (Tex.App.-Houston [1st Dist.] 1993, no writ). Phippen's points (7), (9), (12), and (14) are overruled.

In points (15) and (16), Phippen contends that the trial court erred:

-in failing to grant appellants a directed verdict or a judgment notwithstanding the verdict, and in submitting jury question number 7 because there was no evidence or legally and factually insufficient evidence of any fraudulent conveyance and the jury's verdict was against the great weight of the evidence; and

-in overruling appellants' objections to jury question number 7 because the question was based on the wrong statute and was defective.

These two points are overruled for the combined reasons that no authorities are cited in support of the arguments (*see State Farm Lloyds, Inc. v. Williams,* 960 S.W.2d at 788–89) and because the contentions on appeal do not comport with those raised at trial (*see Federal Deposit Ins. Corp. v. Golden Imports, Inc.,* 859 S.W.2d at 641).

The two issues raised by Traveland and Williams and identified previously are similar to Phippen's points (17) and (20), and these issues will be considered together in this opinion.

In nine of Phippen's ten remaining points, he contends that the trial court erred in failing to grant a directed verdict or a judgment notwithstanding the verdict:

-because Deere cannot maintain a cause of action for fraud as a matter of law;

-in submitting jury question 5, because there was no evidence or legally and factually insufficient evidence to support the jury's verdict on fraud and the jury's ver-

dict on fraud is against the great weight and preponderance of the evidence;

-because appellee cannot maintain a cause or action for conspiracy to defraud as a matter of law;

-in submitting jury question number 22 because there was no evidence or legally and factually insufficient evidence to support the jury's verdict on conspiracy to defraud and the jury's verdict is against the great weight and preponderance of the evidence;

-in overruling appellants' objections to jury question number 15 because there was no evidence or legally and factually insufficient evidence of conversion and the jury's verdict on conversion is against the great weight of the evidence;

-in submitting jury question number 18 because there was no evidence or legally and factually insufficient evidence of unjust enrichment;

-in submitting jury question number 20 because there was no evidence or legally and factually insufficient evidence that appellants held money that belonged to appellee;

-in submitting jury question number 9 because there was no evidence or legally and factually insufficient evidence that Four Star was liable for Traveland's contractual obligations, if any; and

-in submitting jury question number 10 because there was no evidence or legally and factually insufficient evidence that Clark Phippen used Traveland to perpetrate a fraud.

In his final point of error, Phippen contends that all errors alleged by him were cumulative and prevented appellants from receiving a fair trial.

We will briefly summarize the facts in order to place the discussion of the remaining issues in context. Additional facts will be recited under issue consideration as necessary.

James Ted Williams, president and sole stockholder of Traveland, a recreational vehicle dealership in Beaumont, Texas, obtained a line of credit in February 1991 from Deere to finance purchases by Traveland of recreational vehicles from a company called Monaco. Williams signed a security agreement and power of attorney on behalf of Traveland, plus a personal guaranty of the debt to Deere.

In October 1991, Traveland needed additional money to finance its operations, and Williams borrowed $100,000.00 from J & J Industries, a company wholly owned by Phippen. Traveland gave J & J a ninety-day promissory note, plus all of Traveland's corporate stock and other physical assets owned by Williams, as security for the loan. After this transaction, Phippen began to take a close interest in Traveland's day-to-day operations. Eventually, he assumed control of Traveland's operations, becoming the majority shareholder and director in June or July 1992.

One of the vehicles purchased by Traveland from Monaco was a forty-foot motor home, referred to at trial as vehicle 18053. Traveland borrowed $186,997.00 from Deere to finance the purchase of that vehicle. Traveland later sold the vehicle to its attorney, Tom Swearingen, for $186,800.00 on December 24, 1991, and immediately closed the business for the Christmas holidays. Swearingen paid cash for the vehicle at the time of purchase. Traveland owed approximately $170,000.00 to Deere on vehicle 18053 at the time it was sold. The security agreement between Traveland and Deere required Traveland to pay off the floor plan note immediately upon the sale of the vehicle.

When Traveland reopened for business, Phippen instructed Traveland not to pay off the debt to Deere on vehicle 18053, because he wanted to get *his* money back first. Traveland did not pay off the debt, nor did it inform Deere that vehicle 18053 had been sold. The proceeds from the sale were placed into Traveland's general operating account and were used to finance Traveland's operating expenses. Phippen instructed Traveland to continue to make monthly principal and interest payments to Deere on vehicle 18053. Deere contends that, for that reason, it was unaware that the vehicle had been sold in December 1991 and that payment in full was due/overdue on that vehicle pursuant to the financing agreement.

In September 1992, Phippen, by then the majority stockholder and a director of Traveland, removed Williams as president/employee and director of the company, and Phippen assumed the position of president of the company. He personally paid off the debt balances on two other motor homes financed by Deere, but he did not pay Deere for vehicle 18053.

Phippen's J & J Industries bought the land on which the Traveland dealership was located and thereafter received rent from Traveland. There was testimony that Phippen directed Traveland to stop paying rent on the land. Deere contends that, afterward, on the basis that Traveland had defaulted on its rental obligation, J & J Industries foreclosed on Traveland and seized its assets, valued at $935,000.00. A few days later, the dealership reopened under the new name of Four Star RV and Marine, Inc. and continued operations as before, except under the ownership and direction of Phippen.

Phippen paid Deere for the remaining balance on all vehicles it was financing for Traveland (Four Star), except for vehicle 18053. Phippen informed his Traveland manager, Jimmy Bunch, that he was going to let Williams pay for that one. Deere did not learn until October 1992 that Traveland had sold vehicle 18053 in December 1991. When it learned of that sale, Deere made a written demand for immediate payment of $135,524.52 from Williams and "Fippen" (Phippen). The amount was not paid.

Phippen continued to operate the business as Four Star RV and Marine, Inc., but the business eventually failed.

In 1995, Deere filed the underlying lawsuit against Traveland, Williams, Phippen, and Four Star.

In their point 1 (Traveland and Williams) and point 20 (Phippen), appellants contend that the trial court erred in overruling their motion for new trial because the judgment is based on a defective verdict. They contend that the verdict on exemplary damages was not unanimous and that it therefore should have been signed by each concurring juror, citing Tex.R. Civ. P. 226a and 292. Rule 226a provides in relevant part that if a verdict is unanimous, it shall be signed by the presiding juror, and if not unanimous, then those jurors who agree with all of the findings shall sign the verdict. Rule 292 provides in relevant part that if any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict. In the case at bar, the verdict on exemplary damages is signed by the presiding juror in the space indicating a unanimous verdict, but there is also the signature of one of the other jurors below that of the presiding juror's. The trial judge noted this on the record when the verdict was announced and asked if there was any objection. No objection was voiced by either side. The record contains an affidavit from the jury foreman to the effect that eleven jurors concurred in each finding for exemplary damages. Phippen could have asked that the jury be polled when the verdict was announced, but did not. Had he done so, the defect would have been apparent and corrective action could have been taken. In a later motion for new trial, Traveland and Williams raised this issue with the court, but the motion was overruled. Traveland and Williams cite the case of *McCauley v. Charter Oak Fire Ins. Co.*, 660 S.W.2d 863 (Tex.App.—Tyler 1983, writ ref'd n.r.e). The court held in that case that Rule 292 is mandatory and that the same ten jurors in a civil trial must answer each and all of the issues upon which the court bases its judgment. The case is inapposite, however. In that case, the appellant objected to the form of the verdict before the trial judge discharged the jury. *Id.* at 864–65; *see Lewis v. Texas Employers' Ins. Ass'n*, 151 Tex. 95, 246 S.W.2d 599, 601 (1952) (party dissatisfied with verdict must object before verdict is officially accepted and jury is discharged so as to allow trial judge to correct the error, if any); *see also Roling v. Alamo Group (USA), Inc.*, 840 S.W.2d 107, 110 (Tex.App.—Eastland 1992, writ denied) (objection to incomplete verdict must be made before jury is discharged in order to preserve error). In the instant case, Phippen has not shown that Deere is the party dissatisfied with the verdict. We see no reason why Deere would be dissatisfied with a verdict in its favor. Phippen, rather than Deere, qualifies as the dis-

satisfied party, in that the verdict was against him and not in proper technical form.

Because the appellants, whom we view as the dissatisfied parties, failed to raise their objections to the exemplary damages verdict at trial before the jury was discharged, so that the trial court could have instructed the jury to enter a corrected verdict, we conclude that appellants waived their objection to this issue and that nothing is before this Court for review. *See Dilbeck v. Ideal Bread Co.*, 562 S.W.2d 563, 565 (Tex.Civ.App.—Texarkana 1978, no writ) (where there was no objection or motion for mistrial before the verdict was accepted and jury was discharged and no request for a jury poll was made, defendants waived any irregularities in the signing or return of the verdict).

Phippen urges that he did not waive error, because the objection to the verdict should have been made by Deere, the party Phippen claims would have benefited from the correction, citing *Fleet v. Fleet*, 711 S.W.2d 1 (Tex. 1986). Phippen has not explained what that benefit would have been. Because there was no objection, any error was waived, and the verdict remained in favor of Deere. In any event, Deere did not benefit from the alleged error.

Point 1 by Traveland and Williams and point 20 by Phippen are overruled.

Before commencing our consideration of the remaining points raised by the appellants, we find it appropriate to set out certain standards of review applicable to our analysis.

The standard of review for a directed verdict requires us to determine whether reasonable minds can draw only one conclusion from the evidence. We must decide if there is evidence of probative force to raise fact issues on the material questions presented, and in doing so, we must consider all the evidence in the light most favorable to the party against whom the verdict was or should have been instructed, disregarding all contrary evidence and inferences. When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 177 (Tex.App.—Amarillo 1996,

writ denied) (citing *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978)).

In reviewing an issue of whether the trial court erred in failing to grant a motion for judgment *non obstante veredicto*, we use the same standard of review as that for a legal sufficiency point. *See Southwestern Bell Tel. Co. v. Sims*, 615 S.W.2d 858, 861 (Tex.Civ. App.-Houston [1 st Dist.] 1981, no writ). A "legal sufficiency" point is a "no evidence" point presenting a question of law.

In reviewing the evidence for legal sufficiency, we must consider the evidence and inferences that tend to support the jury's finding, and we must disregard all evidence and inferences to the contrary. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997). When we consider factual sufficiency, we must consider and weigh all of the evidence, and we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

In their second point, Traveland and Williams contend that the court erred in overruling their motion for judgment notwithstanding the verdict and their motion for new trial because there is no evidence to support the jury's answer to questions number 2 and 5, i.e., there was no evidence of a floor plan note or other writing evidencing an extension of credit by Deere to Traveland. Phippen raises a similar issue as his point 17.

Question 2 was asked and answered as follows:

What sum of money, if paid now in cash, would fairly and reasonably compensate Deere for its damages, if any, that resulted from Traveland's failure to comply with the Security Agreement and Power of Attorney?

Consider the following elements of damages, if any, and none other.

The principal amount of the debt that Traveland failed to pay Deere.

Do not add any amount for interest on past damages, if any.

Answer in dollars and cents for damages, if any.

ANSWER: $135,524

Question 5 asked and was answered as follows:

Did the following defendants, if any, commit fraud against Deere?

Answer "Yes" or "No" as to each defendant.

| James Ted Williams | Yes |
| Traveland | Yes |
| Clark Phippen | Yes |

Appellants argue that there is no evidence or there is insufficient evidence to support the jury's answer to questions 2 and 5 and that the court erred in overruling their motion for a directed verdict because the plaintiff failed to offer any evidence of a floor plan promissory note or any other writing evidencing an extension of credit to Traveland.

Appellants argue that without proving or at least raising a fact issue, Deere cannot prevail on its guaranty agreement against appellant Williams. Among the cases cited are *Houston Sash and Door Co. v. Heaner*, 577 S.W.2d 217 (Tex.1979), and *Moore v. White Motor Credit Corp.*, 708 S.W.2d 465, 472 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). In those cases, however, unlike the case at bar, the contracts did not provide for payment to the lender upon sale by the debtor of the financed item.

Deere counters that it did not need to introduce the promissory note into evidence, pointing out that the security agreement executed by Williams for Traveland at the time of financing includes a provision that "Debtor shall pay Secured Party the amount of any extension of credit according to the terms of any floor plan note *or any other writing evidencing such extension of credit* ...." (emphasis added). The security agreement also provides: "Notwithstanding the foregoing, Debtor agrees to pay Secured Party the amount of any extension of credit on each item of Inventory financed hereunder immediately upon the sale thereof or removal from the location listed in Paragraph 18 except for purposes of incidental demonstration."

Deere points out that it introduced into evidence a writing evidencing its extension of credit to Traveland: Monaco's invoice to Traveland in the amount of $186,997.00 for vehicle 18053. Accordingly, under the terms of the security agreement, above quoted, this was an "other writing" evidencing an extension of credit to Traveland. Moreover, Williams testified that Deere financed $186,997.00 on vehicle 18053 when it was purchased by Traveland.

We conclude that there was some evidence to support the jury's answers to questions 2 and 5 and that the evidence was legally and factually sufficient. Traveland and Williams' point 2 and Phippen's point 17 are overruled.

In points 1 and 2, Phippen contends that the court erred in failing to grant a directed verdict or judgment notwithstanding the verdict, because Deere cannot maintain a cause of action for fraud as a matter of law. Phippen further contends that the court erred in submitting jury question 5 (whether James Ted Williams, Traveland, or Clark Phippen committed fraud against Deere), because there was no evidence or there was legally and factually insufficient evidence to support the jury's verdict on fraud and because the jury's verdict on fraud was against the great weight and preponderance of the evidence. Appellants also claim that Deere was not entitled to submit a cause of action for fraud in this case, because failure to perform under a contract creates liability only for breach of the contract.

In response to question 5, the jury found that Williams, Traveland, and Phippen had committed fraud against Deere.

The trial court defined "fraud" to the jury as follows:

"Fraud" occurs when

(a) a party conceals or fails to disclose a material fact within the knowledge of that party;

(b) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;

(c) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and

(d) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

— OR —

"Fraud" occurs when

(a) a party makes a material misrepresentation;

(b) the misrepresentation is made with knowledge of its falsity;

(c) the misrepresentation is made with the intention that it should be acted on by the other party; and

(d) the other party acts in reliance on the misrepresentation and thereby suffers injury.

The first definition above tracks the language suggested by Texas Pattern Jury Charge 105.03 for common-law fraud (concealment or failure to disclose). *See* 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 105.03 (1993). The second definition essentially tracks the language set forth by the Texas Supreme Court in *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997).

Deere argues that Phippen had a duty to disclose to it the sale of vehicle 18053, because Traveland employees, at Phippen's directions and acting as Phippen's agents, furnished false information about the status of that vehicle during monthly floor plan checks by Deere employees, thus effectively concealing from Deere the fact that the vehicle had been sold and was no longer in Traveland's inventory; because Phippen knew considerably before September 1992, i.e., during January 1992, according to testimony of Jimmy Bunch, former office manager of Traveland, that the representations by Traveland employees as to the circumstances surrounding vehicle 18053 were untrue; because as a Traveland director, officer, and majority shareholder as of June or July, 1992, Phippen had a duty to inform Deere of the misrepresentations; because, instead, Phippen concealed the truth from Deere and then purchased the other two motor home units financed by Deere for the remaining amount of debt on those two vehicles, thereby gaining for himself all of Traveland's equity in

those vehicles; because, as evidenced by the testimony of Chris Gray, Deere would have repossessed the other two vehicles before Phippen purchased them if it had learned of Traveland's deception; because Traveland had created a false impression about the status of vehicle 18053 by sending monthly principal and interest payments to Deere, as instructed by Phippen, so as to conceal from Deere the fact that the vehicle had been sold.

Deere argues that, because of this deception by Phippen or at his direction, Deere was falsely induced to forbear taking action to prevent major losses, that Traveland eventually defaulted on its debt to Deere without paying the more than $135,000.00 owed to it on vehicle 18053, and that Deere lost a chance to recoup some of this loss when Phippen purchased the other two motor vehicles without disclosing the deception to Deere. Deere points out that no .contract existed between it and Phippen and that the allegations against Phippen arose solely from his conduct *following* the breach of the contract by Williams and Traveland.

Phippen argues that his duty to pay money, if any, arose solely from the contractual terms of the financing agreement. But Phippen was not a party to that agreement and Deere's response is that Phippen's fraud liability occurred because he violated a duty not to conceal information from Deere and by using the concealed information to his benefit and to Deere's detriment.

Phippen also contends that fraud will not lie against him, because the only damage suffered by Deere was the economic loss to the subject of the contract itself. However, as noted, Phippen was not a party to the contract between Deere and Traveland, and Deere is not precluded from recovering its damages caused by Phippen's fraudulent misrepresentations merely because those damages constitute an "economic" loss only. *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex.1990); *Matthews v. AmWest Sav. Ass'n*, 825 S.W.2d 552, 554 (Tex.App.-Beaumont 1992, writ denied). Further, we note that TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a)(1) (Vernon 1997) expressly authorizes exemplary damages for fraud without

making any exception based on the type of loss sustained by the injured party.

We conclude that Phippen failed to show that Deere could not maintain a cause of action for fraud against him as a matter of law. The first point is overruled.

■ Next, Phippen contends that the court should not have submitted jury question 5 as to fraud because there was no evidence or there was insufficient evidence to support the jury's verdict on fraud, and because the jury's verdict on fraud was against the great weight and preponderance of the evidence.

Deere points out that, beginning in January 1992, Phippen assumed effective control of the operations of Traveland and ordered Jimmy Bunch and Traveland employees not to pay Deere the debt owed on vehicle 18053 until he (Phippen) had recouped the money owed to him because of his loan to Traveland; that Traveland employees obeyed these instructions for eight months by concealing from Deere the fact that vehicle 18053 had been sold and that the sale proceeds had not been turned over to Deere as required by the financing agreement; that Phippen instructed Traveland employees to continue monthly principal and interest payments to Deere in order to deceive Deere into thinking that vehicle 18053 was still part of the collateral; that Deere was unaware that vehicle 18053 had been sold and had no opportunity to discover the truth because the sale was being concealed by Traveland; that in concealing the sale, Phippen's intentions were to induce Deere not to demand immediate payment for vehicle 18053, thereby making it possible for Traveland to retain more money than Phippen could have obtained for himself; and that Deere suffered injury because Phippen bought the other two Monaco motor homes financed by Deere for the remaining principal due, with the considerable equity in those units going to Phippen.

Deere contends that the above facts were legally sufficient to support the verdict as to fraud. We agree. Moreover, after weighing all of the evidence, we conclude that the verdict was not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

The second point is overruled.

Next, in point 3, Phippen argues that Deere cannot maintain a cause of action for conspiracy to defraud as a matter of law. His argument is that there was no underlying tort of fraud on which to base the conspiracy to defraud claim. The jury, however, found that fraud occurred. As we earlier concluded, the jury correctly found fraud to exist on the part of Phippen and others. Accordingly, for the reasons expressed under the discussions of points 1 and 2, point 3 is overruled.

■ Next, in point 4, Phippen contends that the court erred in submitting jury question 22 because there was no evidence or there was legally and factually insufficient evidence to support the jury's verdict on conspiracy to defraud and, moreover, the jury's verdict was contrary to the great weight and preponderance of the evidence. Question 22 asked whether James Ted Williams, Traveland, or Clark Phippen conspired to defraud Deere. The jury answered "yes" as to each of those persons. The question also included a definition of "conspiracy to defraud" as follows:

A "conspiracy to defraud" on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose. Further, it is not required that each and every act of the conspirator be shown to have been in concert with others or that it be established by direct proof that all the conspirators combined at a given time prior to each act or transaction. Therefore, it is not necessary to prove that each of the conspirators was present at each act or transaction which forms the basis of the conspiracy. Moreover, persons may enter into the conspiracy at different times. All parties to a conspiracy are responsible for each and every act of any conspirator carrying out the conspiracy.

"Person" means a natural person, a partnership or a corporation.

Phippen argues that Deere cannot maintain a cause of action against him, Traveland, and Williams as a matter of law, because a corporation cannot conspire with its own management personnel or employees when they act within the scope of their employment or in an agency relationship; that Williams was the president of Traveland at the time of the alleged conspiracy; that he (Phippen) was a stockholder and director of the corporation and that all acts of the appellants were in their capacity as management personnel or employees of the company. Phippen argues that there was no evidence of a conflict of interest between Traveland and Phippen, who owned J & J Industries (a creditor and landlord of Traveland) or that Phippen or J & J took any actions in conflict with Traveland's interests.

Phippen also argues that Deere failed to prove all the elements of a conspiracy, i.e., there was no or insufficient evidence of a meeting of the minds to accomplish a conspiracy; there was no preconceived plan and unity of design and purpose; that he did not know that vehicle 18053 was sold until September 1992, and that he fired Ted Williams when he learned of it; that Williams testified that he thought Traveland had paid Deere for vehicle 18053 and did not realize Deere had not been paid for that vehicle until Jim Bunch told him in September; and that Bunch had testified that there was no plan not to pay Deere-rather, there just was not enough money to do so.

Deere responds that Phippen contradicted his argument above by stating in his brief that he had no duty to disclose information to Deere because he was only a creditor of Traveland, not a shareholder, officer, or director of the company. Phippen did make that statement. Moreover, Deere contends that this Court has rejected the claim that, because a parent and subsidiary have identical interests, they cannot conspire with each other, citing *Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439 (Tex.App.—Texarkana 1993, writ denied).

Deere concedes that Phippen was not a director, officer, or shareholder of Traveland until June or July 1992. There was testimony, however, that Jimmy Bunch and Phippen agreed in January 1992 to withhold the sales proceeds from Deere on the sale of vehicle 18053. Deere contends that this is evidence that the conspiracy began well before Phippen became an officer, director, or shareholder of Traveland, and therefore the general rule put forth by Phippen as to conspiracy among employees was inapplicable here.

Deere also argues that there were conflicts between Traveland's interests and the interests of J & J Industries, owned by Phippen. Deere further points out that Phippen concedes in his brief that even an officer, director, or shareholder of a corporation can be liable for conspiracy to defraud if such person is simultaneously involved with another company or entity with conflicting interests. Moreover, Deere contends that Phippen *was* involved with J & J Industries all the time he was involved with Traveland and that their interests conflicted as follows: Jimmy Bunch testified that he and Phippen made the decision not to tell Deere about the sale of vehicle 18053; Traveland continued paying principal and interest on vehicle 18053 to Deere because of Phippen's orders; Bunch and Phippen discussed the debt to Deere on vehicle 18053 on several occasions and that he agreed not to pay the debt, pursuant to Phippen's wishes; and that Phippen took control of all of Traveland's records at the beginning of 1992 and at that time started to give specific instructions on how to manage Traveland's money.

Deere points out that Williams testified that Phippen and Jimmy Bunch were in control of Traveland after December 1991 and that Phippen had told Williams not to pay Deere for vehicle 18053.

Phippen contends that there was evidence that neither he nor Williams was aware of the debt to Deere for vehicle 18053 until September 1992, but Jimmy Bunch, as previously noted, testified that both Phippen and Williams knew of the debt. Williams, on the other hand, testified that Phippen and Bunch knew of the debt to Deere and decided not to pay it, but concealed the information from him until September 1992. As pointed out by Deere, the credibility of the witnesses was for the jury, and it was within the prerogative of the jury to believe or disbelieve all or

any part of this testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986).

There was sufficient evidence to support the jury's finding that Phippen conspired with others to defraud Deere. Point 4 is overruled.

■ In point 6, Phippen contends that the court erred in failing to grant him a directed verdict or a judgment notwithstanding the verdict and in overruling his objections to jury question 15 because there is no evidence or there is factually insufficient evidence of conversion and the jury's verdict on conversion is against the great weight and preponderance of the evidence.

Question 15 of the jury charge asked whether Traveland, Williams, Phippen, or Four Star converted to their use the sales proceeds owed to Deere under the security agreement and power of attorney. The court defined conversion as the unauthorized assumption and exercise of dominion and control over the personal property (including sales proceeds) of another, which is to the exclusion of, or inconsistent with, such person's rights; and that an exercise of dominion and control is unauthorized if the personal property is not returned after demand is made by the party entitled to possession.

The jury answered "yes" as to each person named.

Phippen argues that conversion is a tort cause of action and cannot lie in this case. We have already considered that argument and have rejected Phippen's contention that Deere's claim sounds only in contract and not in tort.

Phippen also argues that Deere cannot recover for conversion as a matter of law because it seeks to recover money that cannot be specifically identified, citing *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157 (Tex.App.-Houston [14th Dist.] 1996, writ denied), and *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392 (Tex.App.-Dallas 1988, writ denied). The courts in those cases held that an action for conversion will lie for the recovery of money only if the money can be identified as a specific chattel and that, when an indebtedness can be discharged by payment

of money generally, an action in conversion is inappropriate.

Deere counters that a conversion action will lie because of the language of the security agreement, i.e., paragraph 12.2 of the agreement provides in relevant part that Deere had the right to take immediate and exclusive possession of all collateral or any part thereof, wherever it may be found; and paragraph 1.3 provides that "collateral" includes proceeds from the collateral described in the agreement. Deere further argues that, accordingly, as soon as Traveland went into default with respect to a particular sale (vehicle 18053), it had an immediate and exclusive right to the proceeds of that sale. That default occurred on December 24, 1991, when the vehicle was sold and Traveland failed to immediately pay Deere the $170,-000.00 due on the vehicle.

■ Phippen argues that, because Deere did not require Traveland to segregate the funds received from the sale, and because Traveland placed the funds in its operating account, the proceeds were not "specific money" capable of conversion. An action for conversion of money will lie where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper. *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex.App.—Dallas 1992, writ denied). In the case at bar, Phippen correctly contends that the security agreement did not require that Traveland segregate the funds from the sale of a vehicle or keep the money in any particular form. The facts thus do not comport with the requirements for "specific money" which could give rise to an action for conversion.

Accordingly, point 6 is sustained.

■ In point 8, Phippen contends that the court erred in submitting jury question 18 because there was no evidence or there was legally and factually insufficient evidence of unjust enrichment. At trial, Phippen objected to question 18 on the ground that there was no evidence to support submission of the question to the jury. The question asked whether Traveland, James Ted

Williams, Clark Phippen, or Four Star had been unjustly enriched by retention of the proceeds from the sale of vehicle 18053. The jury answered "yes" as to each defendant.

Deere argues that there was overwhelming evidence that Phippen and Four Star held money that in equity and good conscience belonged to Deere; that Phippen and Four Star conceded in their brief that Traveland received payment for vehicle 18053 on December 24, 1991; that Traveland did not pay Deere for that vehicle as it was obligated to do at the time of the sale, according to the security agreement; and that Traveland thus held money which belonged to Deere. Further, Deere contends that Phippen shut down Traveland and seized all of the cash in the company's account, and that Phippen took $935,000.00 in assets from Traveland and transferred them to Four Star. Bunch testified that, although Traveland owed money on some of the inventory, Traveland had both new and used motor homes with equity when Phippen transferred them to Four Star.

Deere further contends that Phippen caused J & J Industries to foreclose on the property on which Traveland was located on the basis of nonpayment of rent; that Traveland had stopped making rental payments only after Phippen informed Traveland not to pay the rent on the land after he acquired the property for J & J; that in having J & J foreclose, Phippen took for himself and Four Star several thousand dollars' worth of improvements on the land which had been paid for by Traveland; and that after seizing Traveland's assets, Phippen used part of them to pay personal debts.

 Deere contends that this is overwhelming evidence that Phippen and Four Star ended up with money that in equity and good conscience belonged to Deere, and the evidence is therefore sufficient to support the verdict both as to unjust enrichment and money had and received.[1] We agree. Point 8 is overruled.

 In point 10, Phippin contends that the court erred in submitting jury question 20 because there was no evidence or there was legally and factually insufficient evidence that Phippen held money that belonged to Deere. Jury question 20 asked whether Traveland, James Ted Williams, Clark Phippen, or Four Star held money that, in equity and good conscience, belonged to Deere. The jury answered "yes" as to each defendant.

At trial, Phippen objected only that there was no evidence to support submission of this question and therefore waived his contentions concerning the legal and factual sufficiency of the evidence. As to his no evidence argument, our discussion of the evidence under point 8 is also relevant to this point, and we conclude there was some evidence to support the jury's verdict that the appellants held money that belonged to Deere.

Phippen also argues that the jury questions on money had and received and unjust enrichment were improper because they were not predicated on a finding that Deere had a specific interest in the proceeds from the sale of vehicle 18053. Again, Phippen failed to make this objection at trial and thus waived error, if any. Point 10 is overruled.

 In point 11, Phippen argues that the court erred in submitting jury question 9 because there was no evidence or there was legally and factually insufficient evidence that Four Star was liable for Traveland's contractual obligations, if any. Question 9 asked the jury whether Four States was liable for Traveland's obligations under the security agreement and power of attorney.

At trial, Phippen objected that there was no evidence in the record of liability of Four Star under the security agreement and power of attorney; that there was no showing and no evidence of any debtor/creditor relationship between Deere and any other defen-

---

1. "Money had and received" is an equitable doctrine applied to prevent unjust enrichment. *Miller–Rogaska, Inc. v. Bank One, Texas, N. A.*, 931 S.W.2d 655, 662 (Tex.App.—Dallas 1996, no writ). An action for money had and received arises when one person obtains money which in equity and good conscience belongs to another,

*Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ), and it belongs conceptually to the doctrine of unjust enrichment. *Id.* It is a quasi-contractual action involving an implied promise and leading to a claim of debt not evidenced by a writing. *Id.*

dant in the lawsuit; and that there was no evidence that Four Star was a debtor of Deere.

The court instructed the jury that Four Star was liable for such obligations if: (1) Traveland and Four Star engaged in a fraudulent transaction in an effort to escape liability; or (2) Four Star was a mere continuation of Traveland.

The jury answered the question "yes."

Phippen argues that the only evidence regarding transfers of the motor homes was that the transfers were to Four Star, not Phippen, and that he received no benefit from the transfers. Actually, the record shows that the transfers were to J & J Industries, which was wholly owned by Phippen, and thereafter to Four Star, also owned in large part by Phippen. Phippen also argues that more debts than assets of Traveland were transferred to Four Star, but he does not explain that statement. He indicates that the debt on the motor homes was in excess of $350,000.00, but he does not show the asset value of those vehicles. He contends that no money was taken out of Traveland's accounts for transfer to Four Star or himself. Deere disputes this.

Phippen further argues that the inventory assets were encumbered by valid liens and therefore should not have been considered as property, citing TEX. BUS. & COM.CODE ANN. § 24.002 (Vernon 1987 & Supp.1998). Actually, Section 24.002(2)(A) of that Code provides that "asset" means the property of a debtor, but that the term *does not include property to the extent that it is encumbered by a valid lien.* In the alternative, Phippen contends that the evidence was insufficient to support the verdict and that the verdict was against the great weight and preponderance of the evidence.

Deere counters that the evidence was sufficient to support the jury's answer to question 9. He argues that a successor corporation is liable for the debts of a predecessor corporation if the transaction is a fraudulent endeavor by the original corporation to escape liability, citing *Western Resources Life Ins. Co. v. Gerhardt,* 553 S.W.2d 783 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.).

Deere contends that the jury had sufficient information to find that the formation of Four Star was a fraudulent endeavor to escape Traveland's obligations: Four Star took possession of all of Traveland's assets, valued by Phippen's accountant at $935,000.00, from J & J after J & J foreclosed on Traveland for nonpayment of rent; that a few days later, Four Star opened for business at the same location where Traveland operated, using Traveland's assets and employees; that Four Star's operation was basically the same as Traveland's, except that it was operating under a new name; and that the purpose of shutting down Traveland and starting up Four Star was to give him a "fresh start" to try to recoup the money he had invested in Traveland.

Deere contends that this was some evidence from which the jury could have concluded that the shutting down of Traveland and the starting up of Four Star was a fraudulent transaction to escape liability.

Alternatively, Deere argues that the jury heard evidence sufficient for them to conclude that Four Star was a mere continuation of Traveland. Everything was basically the same, except for the new name. The equipment with which to work was the same, as was the location and many of the employees. The jury could have concluded that Four Star was merely a continuation of Traveland.

We conclude that the record was sufficient to show that Traveland and Four Star engaged in a fraudulent transaction in an effort to escape liability, and we further conclude that the evidence was sufficient to show that Four Star was a mere continuation of Traveland. Either of these circumstances was enough to support the jury's finding that Four Star is liable for Traveland's obligations under the security agreement and power of attorney. Point 11 is overruled.

In point 13, Phippen argues that the court erred in submitting jury question 10 because there is no evidence or there is legally and factually insufficient evidence that Clark Phippen used Traveland to perpetrate a fraud. Question 10 asked whether Clark Phippen caused Traveland to be used for the purpose of perpetrating, and whether

it perpetrated, an actual fraud on Deere for Clark Phippen's benefit. The jury answered "yes."

At trial, Phippen objected to question 10 on the grounds that there was no evidence to support the submission of the question to the jury; that the question was a comment on the weight of the evidence; and that there was no basis to support the submission of the question. Because only the "no evidence" portion of the objection comports with the objection made at trial, only that issue is before this Court for review.

Phippen contends that Deere's relationship to Traveland was contractual, entered into one and a half years before Phippen became a stockholder of Traveland; that there is no evidence that the corporate form was used to perpetrate a fraud on Deere for Phippen's benefit; and that Deere never dealt with him (Phippen), but always dealt with Traveland or Williams.

Deere counters that the jury heard substantial evidence to the effect that Phippen caused Traveland to be used to perpetrate a fraud on Deere for Phippen's benefit: Bunch testified that Phippen directed Traveland employees to cease paying rent to J & J Industries, and then later caused J & J to foreclose on Traveland and seize all of Traveland's assets; that Four Star opened as a new business at the same location as had been used by Traveland, using Traveland's assets and personnel; that Phippen instructed Bunch to tell creditors that Four Star was unrelated to Traveland and was not responsible for Traveland's debts; that Phippen took an undetermined amount of cash out of Traveland's account without paying Deere; that Bunch testified that Four Star received assets of Traveland valued at more than $935,000.00 and sold them without paying Traveland's debts; that Phippen owned all of the stock of Four Star, and he therefore reaped all of the benefits of these actions.

The above is sufficient evidence to support the jury's answer to question 10 to the effect that Phippen used Traveland to perpetrate a fraud. Point 13 is overruled.

In point 21, Phippen argues that all of the preceding errors were cumulative and pre-vented him and the other appellants from receiving a fair trial. He bases this argument on his conclusion that the points raised by him had merit and that their cumulative effect prevented him from receiving a fair trial. We have previously found against Phippen on all except one point submitted by him. Accordingly, point 21 is overruled.

Phippen submitted a reply brief in which he reinforces the arguments already filed in his initial brief. He contends that all of Deere's causes of action are without merit. This, essentially, was his contention in his initial brief. He continues to assert that Deere's causes of action arise from contract and that tort actions against him cannot be maintained. He contends that he had no control over Traveland and that he and Four Star are innocent parties in this affair. For the reasons expressed above, we disagree.

Our disposition of point 6 does not affect the outcome of the appeal. The judgment of the trial court is affirmed.