Opinion issued October 20, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00475-CV

———————————

Maurice Oliver and Dionne C. Oliver, Appellants

V.

James Hill, Appellee



 



 

On Appeal from the County Civil Court No. 4

Harris County, Texas



Trial Court Case No. 908,424

 



 

MEMORANDUM OPINION

          Maurice
and Dionne C. Oliver appeal the trial court summary judgment arising out of a
dispute with James Hill over an agreement to lease and transfer real property
located in Spring, Texas.[1]  Maurice Oliver claims that the trial court
erred in granting summary judgment in favor of Hill on his claims for breach of
contract, defamation, fraud in a real estate transaction, and malicious
prosecution.  The Olivers further
challenge the trial court’s grant of summary judgment dismissing their
counterclaims for breach of contract, money had and received, intentional
infliction of emotional distress, and violations of the Property Code.  Finding no error, we affirm.

Background

          In
July 2007, the Hills and the Olivers entered into a lease-to-purchase agreement
of a single-family residence owned by the Hills.  Under the terms of that agreement, the
Olivers agreed to pay the Hills a monthly payment of $2,500.00 for a one-year
period.  In addition, they would pay $5,000.00
as an advancement of rent and $5,000.00 as a security deposit.  The Hills agreed to apply $800.00 of the
monthly payment toward equity and the remainder would serve as rent. Once
Oliver satisfied other obligations relating to the sale, the security deposit
would become the down payment for purchase.  

          The
parties memorialized their agreement on a revised rent-to-buy form
contract.  All parties signed the
agreement, but the Olivers back-dated their signatures.  Concerned about the validity of the back-dating,
Hill asked the Olivers to execute a revised agreement, but the Olivers refused
to do so.  

          When
the Olivers failed to make their monthly payments for September and October, Hill
sent them notice that they were in default under the agreement and demanded
that they surrender the property.  The
Olivers refused to leave or make payment. 
The dispute between the Olivers and the Hills escalated, and the Hills instituted
an eviction action against the Olivers in a Harris County justice court.  The Hills sued for repair costs to repair
damage to the property and for defamation relating to the filing of a police
report against Hill that resulted in a criminal trespass charge against
him.  Hill was later acquitted of the
charge.

          The
justice court evicted the Olivers, granted possession to Hill, and awarded
$5,000 in unpaid rent.  The Olivers
appealed that judgment to the county court at law.  There, Hill moved for summary judgment on his
own claims, including a claim for repairs to damage to the property, and on the
Olivers’ counterclaims.  In March 2009,
the trial court granted a take-nothing summary judgment on the Olivers’
counterclaims for conversion and money had and received.  In April 2010, the trial court granted
summary judgment on the remaining claims, awarding Hill $46,200.00 in actual
damages for the breach of contract claim, $10,440.00 for repair costs, and $10,000.00
for actual damages for malicious prosecution and defamation, as well as
attorney’s fees and costs.  

Discussion

I.       Summary
Judgment Standard of Review

          We
review a trial court’s summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accid. Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). 
Under the traditional standard for summary judgment, the movant has the
burden to show that no genuine issue of material fact exists and that the trial
court should grant a judgment as a matter of law.  Tex. R. Civ. P. 166a(c); 
KPMG Peat Marwick v. Harrison Cnty.
Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  When
reviewing a summary judgment, we
take as true all evidence favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  Dorsett,
164 S.W.3d at 661; Knott, 128 S.W.3d
at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  

Traditional summary judgment is proper only if the
movant establishes that there is no genuine issue of material fact and that the
movant is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c). The motion must state the specific grounds relied
upon for summary judgment.  Id.  A defendant moving for traditional summary
judgment must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of an
affirmative defense.  Sci. Spectrum,
Inc., 941 S.W.2d at 911.

After adequate time for discovery, a party may move for a
no-evidence summary judgment on the ground that no evidence exists to support
one or more essential elements of a claim or defense on which the opposing
party has the burden of proof.  Tex. R. Civ. P. 166a(i).  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence raising a genuine issue of
material fact.  Id. 
More than a scintilla of evidence exists if the evidence “would allow
reasonable and fair-minded people to differ in their conclusions.”  Forbes Inc. v. Granada
Bioscis., Inc., 124 S.W.3d 167, 172 (Tex.
2003). 

II.      No-evidence summary
judgment on counterclaims

          The
Olivers first challenge the summary judgment, based on no-evidence grounds,
that dismissed their counterclaims for breach of contract, money had and
received, and intentional infliction of emotional distress.  To prevail on a breach of contract claim, a
party must establish that: (1) a valid contract existed between the plaintiff
and the defendant; (2) the plaintiff tendered performance or was excused from
doing so; (3) the defendant breached the terms of the contract; and (4) the
plaintiff sustained damages as a result of the defendant's breach.  See
Valero Mktg. & Supply Co. v. Kalama Int’l, 51 S.W.3d 345, 351 (Tex. App.—Houston
[1st Dist.] 2001, no pet.).  “A breach
occurs when a party fails or refuses to do something he has promised to do.”  Dorsett
v. Cross, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, no
pet.).

          Oliver
references the affidavit he executed in response to Hill’s summary judgment
motion, contending that his testimony creates a genuine issue of material fact
on the breach of contract counterclaim. 
In that affidavit, Oliver claims that the Hills failed to supply new
appliances and to replace the garage door of the home.  

          The
only reference to appliances in the lease and rent-to buy agreement states that
“the eventual purchase price of the home is $220,000 plus cost of refrigerator,
washer & dryer.”  The Olivers do not
dispute the validity of this agreement, which contains a merger clause
declaring that “[t]his lease constitutes the entire agreement between the
landlord and the tenant and can only be modified in writing signed by both
parties.”  

When the parties have concluded a
valid, integrated agreement, the parol evidence rule precludes enforcement of a
prior or contemporaneous inconsistent agreement.  Ledig v.
Duke Energy Corp., 193 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2006,
pet. denied); Baroid Equip., Inc. v.
Odeco Drillling, Inc., 184 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  A written instrument presumes that all prior
agreements relating to the transaction have been merged into it and will be
enforced as written and cannot be added to, varied, or contradicted by parol
testimony.  Baroid Equip., 184 S.W.3d at 13.  The parol evidence rule “is particularly
applicable when the written contract contains a recital that it contains the
entire agreement between the parties or a similarly-worded merger provision.”  Id.  When parol evidence is determined to be
inadmissible, it has no legal effect and merely constitutes proof of facts that
are immaterial and inoperative.  Id. 
Oliver’s affidavit does not raise a material fact issue concerning any
promise other than those memorialized in the written agreement or allege breach
of any promise contained in the written agreement.

The Olivers’ money had and received
claim also lacks merit.  To recover on a
claim for money had and received, a plaintiff must show that the defendant
holds money, which in equity and good conscience belongs to the plaintiff.  Staats
v. Miller, 243 S.W.2d 686, 687 (Tex. 1951); Edwards v. Mid-Continent Office Distribs., L.P., 252 S.W.3d 833,
837 (Tex. App.—Dallas 2008, pet. denied).  A cause of action for money had and received “inquires
whether the defendant has received money which rightfully belongs to another.”  Everett
v. TK-Taito, L.L.C., 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.)
(quoting Amoco Prod. Co. v. Smith,
946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)).  Essentially, it is an equitable doctrine
applied to prevent unjust enrichment.  Hunt v. Baldwin, 68 S.W.3d 117, 132
(Tex. App.—Houston [14th Dist.] 2001, no pet.); Phippen v. Deere & Co., 965 S.W.2d 713, 725 (Tex. App.—Texarkana
1998, no pet.).

When a valid, express contract
covers the subject matter of the parties’ dispute, as a general rule, there can
be no recovery under a quasi-contract theory, such as money had and received.  See
Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000)
(involving claim for unjust enrichment); DeClaire
v. G & B McIntosh Family Ltd. P’ship, 260 S.W.3d 34, 49 (Tex. App.—Houston
[1st Dist.] 2008, no pet.) (same).  As it
addresses the subject in dispute, we hold that the parties’ lease agreement
precludes a claim based on money had and received.

To prevail on their claim for
intentional infliction of emotional distress, the Olivers would have to prove
that: (1) Hill acted intentionally or recklessly; (2) his conduct was extreme
and outrageous; (3) his actions caused the Olivers emotional distress; and (4) his
emotional distress was severe.  See Tex. Farm Bureau Mut. Ins. Cos. v. Sears,
84 S.W.3d 604, 610 (Tex. 2002). To be extreme and outrageous, a defendant’s
conduct must be so outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized society.  Id.  Conduct that is merely insensitive or rude is
not extreme and outrageous.  Id.  Likewise, mere insults, indignities, threats,
annoyances, petty oppressions, or other trivialities do not rise to the level
of extreme and outrageous conduct.  Id.

In contending that Hill’s conduct
was extreme and outrageous, Oliver points to his own affidavit testimony that,
following several heated arguments about the Olivers continuing to stay in the
home without paying rent, Hill came to the front door and threatened that he
“could have [Oliver] killed at any time.” 
Oliver relies on Household Credit
Services v. Driscol, 989 S.W.3d 82 (Tex. App.—El Paso 1998, pet. denied),
and Creditwatch, Inc. v. Jackson, 157
S.W.3d 814 (Tex. 2005).  Those cases do
not support Oliver’s contention.  

In Household Credit Services, Driscol
fell behind on her credit card payments and began to receive dunning calls from
a collection agency.  Id. at  78.  Over
several months, the agency called Driscol at least four or five times per day,
using threatening, profane and abusive language in exhorting Driscol to pay her
bill.  Id.  Driscol spoke with
supervisors at the agency in an effort to stop the abusive language and also
requested that she not receive calls at work.  Id.  Instead of complying, the abuse
escalated.  Id.  The collection agent began
to call Driscol incessantly at work to scream at her and threaten her.  Id.  On one occasion, the agent placed 26 calls to
Driscol in a two-hour period.  Id. at 79.  On another occasion, the agent called in a
bomb threat to Driscol’s workplace, and a man who identified himself as the
agent’s supervisor called Driscol and told her, “I just wanted to let you know
that I put a contract out on you . . . you better be careful leaving your house
and coming home, because we’re going to get you.”  Id.  The court of appeals held that the entire
course of conduct supported Driscol’s intentional infliction of emotional
distress claim:

With the possible exceptions of the bomb and
death threats, no single action of Household or Allied alone, including
name-calling, foul language, any single ill-timed phone call, multiple calls at
home on any single day, repeated calls to Ms. Driscol’s place of employment
after she asked them to stop, or even the threat to make Ms. Driscol’s life
miserable, rises to the level of intentional infliction of emotional distress.
But all of these acts taken together amount to such harassment of a woman who
simply could not pay her VISA bill as to be more than petty oppression.
Together, they rise to the level of behavior beyond all possible bounds of
decency, and utterly intolerable in a civilized community.

Id.  Oliver’s allegations do not involve a
despicable and disruptive course of conduct like that in Household Credit Services.  

In Creditwatch, a former supervisor made lewd advances toward a woman
whose employment had been terminated.  157 S.W.3d at 816.  When she rebuffed his advances, the
supervisor refused to give her a reference letter.  Id.  The supervisor also required a current
employee—who had invited her financially strapped former co-worker to live in
her home—to evict the woman if the
employee wanted to keep her job.  Id. 
The court of appeals had held that this post-termination treatment
raised a fact issue on the extreme and outrageous conduct element of the
woman’s intentional infliction of emotional distress claim, but the Supreme
Court reversed, finding it legally insufficient.  Id.
at 817.  

Here, Oliver alleges a single,
verbal threat that occurred in the context of a contentious legal and financial
dispute among the parties.  Without more,
it does not rise to the legal threshold required to create a fact issue of
extreme and outrageous conduct to form a basis for intentional infliction of
emotional distress.  See Sears, 84 S.W.3d at 610.  Because the Olivers failed to raise a material
fact issue on each element of their counterclaims, we do not disturb the trial
court’s summary judgment dismissing them.

II.      Summary
judgment on Hill’s claims

In challenging the propriety of
summary judgment on Hill’s claims, Oliver complains generally about the amount
of damages awarded to Hill, asserting that “[t]he basis for this request for
summary judgment was a series of sworn statements from affidavits and excerpts
from discovery responses.  Many of these
sworn statements were refuted by Oliver in his point by point refutation of
Hill’s self-serving affidavit.”  Texas
Rule of Appellate Procedure 38.1(h) requires that an appellant’s brief “must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”  Tex. R.
App. P. 38.1(h).  “Rule 38
requires [a party] to provide us with such discussion of the facts and the
authorities relied upon as may be requisite to maintain the point at issue.”  Tesoro
Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 128 (Tex. App.—Houston
[1st Dist.] 2002, pet. denied), quoted in
Morrill v. Cisek, 226 S.W.3d 545, 548
(Tex. App.—Houston [1st Dist.] 2006, no pet.).  “This is not done by merely uttering brief
conclusory statements, unsupported by legal citations.”  Id.  “Issues on appeal are waived if an appellant
fails to support his contention by citations to appropriate authority or cites
only to a single non-controlling case.”  Abdelnour v. Mid Nat’l Holdings, Inc.,
190 S.W.3d 237, 241 (Tex. App.—Houston [1st Dist.] 2006, no pet.); Daniel v. Falcon Interest Realty Corp.,
190 S.W.3d 177, 189 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  The Olivers do not cite any substantive
authority relating to the Hills’ claims, nor do they identify any specific
error in determining the amount of damages awarded to Hill.  We note that the trial court offset the
damages amount by $15,000—the amounts
the Olivers had paid to the Hills in rent and security deposits.  We hold that the Olivers waived any complaint
concerning the propriety of summary judgment or amount of damages awarded on
Hill’s claims.  

Conclusion

          We
hold that the trial court did not err in granting summary judgment dismissing
the Olivers’ counterclaims, and the Olivers waived any challenge to the summary
judgment on Hill’s claims.  We therefore
affirm the judgment of the trial court. 
All pending motions are denied as moot.

 

 

 

                                                          Jane
Bland

                                                          Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

 











[1]           James’s wife, Margaret Hill, who was
also a party to the transaction and in the proceedings below, has since died.